1  KAREN MATTESON, Cal. Bar No. 102103
   mattesonk@sec.gov
2  JOHN B. BULGOZDY, Cal. Bar No. 219897
   bulgozdyj@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Randall R. Lee, Regional Director
5  Briane Nelson Mitchell, Regional Trial Counsel
   5670 Wilshire Boulevard, 11th Floor
6  Los Angeles, California 90036-3648
   Telephone:    (323) 965-3998
7  Facsimile:    (323) 965-3908

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11  SECURITIES AND EXCHANGE          Case No. 03 cv 2230 BEN (WMc)
    COMMISSION,
12                                   **PRETRIAL ORDER**
                   Plaintiff,
13                                   Final Pretrial Conference Date:
            v.                       December 11, 2006
14                                   Time:  3:00 p.m.
    JOHN J. TODD, ROBERT D. MANZA, and  Place:  Courtroom of the Hon. Roger T. Benitez
15  JEFFREY WEITZEN,
16                 Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Following pretrial proceedings pursuant to Fed. R. Civ. P. 16 and Civil Local Rule 16.1.f.6.

IT IS ORDERED:

## I.

This is an action brought by the United States Securities and Exchange Commission seeking relief in the form of permanent injunctions, disgorgement of ill-gotten gains and prejudgment interest, civil penalties and officer and director bars for alleged violations of the antifraud, issuer reporting, and making misrepresentations to auditors provisions of the Securities Act of 1933 ("Securities Act") and Securities Exchange Act of 1934 ("Exchange Act") and rules promulgated thereunder.  The remaining parties are:

      1.      Plaintiff Securities and Exchange Commission ("Commission");

      2.      Defendant John J. Todd ("Todd"); and

      3.      Defendant Robert D. Manza ("Manza").

The pleadings which raise the issues are:

      1.      Complaint For Violations Of The Federal Securities Laws filed November 13, 2003;

      2.      Defendant John J. Todd's Answer To Complaint For Violations Of The Federal Securities Laws filed January 13; 2004 and

      3.      Defendant Robert D. Manza's Answer To Complaint filed January 13, 2004.

## II.

Federal jurisdiction and venue are invoked upon the ground that this Court has jurisdiction pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act; 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa; and venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa, because defendant Todd resides in this district, and certain of the transactions, acts, practices and courses of conduct alleged to constitute violations of the federal securities laws occurred within this district.

1

### III.

The following facts are admitted and require no proof:

1.   Jurisdiction and venue are admitted.

2.   Gateway, Inc. ("Gateway") is incorporated in Delaware.  During the relevant period Gateway was headquartered in San Diego, California.  Gateway directly markets PCs (personal computers) and related products, and also sells those products through retail outlets.  During the relevant time period, Gateway sold products in its Country Stores retail outlets.  Its stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and trades on the New York Stock Exchange.

3.   PricewaterhouseCoopers LLP ("PwC" or the "outside auditor") was Gateway's outside auditor during the relevant period.  PwC conducted quarterly reviews of Gateway's financial results, as well as annual audits during the relevant period.

4.   Gateway recorded and reported sales revenue and income for specific periods, *i.e.*, as of the end of each quarter and at the end of its fiscal year.  Gateway used a calendar year as its fiscal year.  In 2000, Gateway's first quarter ended March 31; its second quarter ended June 30; its third quarter ended September 30; and its fourth quarter ended December 31.

5.   In addition to filing annual and quarterly reports with the Commission, Gateway also issued earnings press releases and held conference calls with analysts and investors to discuss its financial performance on a periodic basis.  These usually occurred after the end of a quarter and before Gateway made its filings with the Commission.

6.   Defendant John J. Todd resides in Rancho Santa Fe, California.  Todd served as Senior Vice President and Chief Financial Officer ("CFO") of Gateway from October 1998 to January 2001.  Todd also signed Gateway's quarterly reports on Form 10-Q filed with the Commission reporting on Gateway's second and third quarters of 2000 as CFO.

2

7.      Todd has been an officer at six public companies, including Gateway, and has served as an officer since leaving Gateway, including serving as an interim CFO for a company.  Todd received a master's degree in business administration from the College of William and Mary, after earning his bachelor's degree from Longwood College.

8.      Todd does not have a degree in accountancy or law.

9.      Todd reported to Gateway's CEO, Jeffrey Weitzen.

10.     Defendant Robert D. Manza resides in Plano Texas.  Manza served as Controller of Gateway from October 1999 to June 2001.  During the relevant period, Manza reported to Defendant Todd.  Manza obtained his certified public accountant ("CPA") license in Michigan in 1985.  Manza signed Gateway's 2000 annual report on Form 10-K, filed with the Commission.

11.     Prior to his employment at Gateway, Manza was employed by Pepsi at the Frito Lay international division from 1993 to October of 1999, including as assistant controller of Frito Lay International, and CFO of its Latin American operations.  Prior to his employment by Pepsi, Manza worked for the accounting firm of PwC from 1983 until 1993 in its audit division, where he was ultimately promoted to senior manager, and both performed field work himself and supervised staff on audits.

**IV.**

The reservations as to the facts recited in paragraph III above are as follows: None.

**V.**

The following facts, though not admitted, are not to be contested at the trial by evidence to the contrary:

12.     Gateway's consumer loan portfolio was divided into "Tiers" which related to FICO scores and interest rates charged.   FICO is an acronym for Fair Isaac Corporation.  It refers to the best-known credit scoring system in the United

03 CV 2230 BEN (WMc)

States.  A score is calculated by mathematical formulae, to determine the likelihood that credit users will pay their bills.  The principal component of a Tier was the range of FICO scores associated with it.  The lower the tier number, the higher the FICO scores within that tier and, accordingly a lower interest rate charged to borrowers.  The higher the tier, the lower the FICO scores associated with that tier and a higher interest rate charged to borrowers in those tiers.

13.   "Outbound" campaigns were sales initiatives whereby Gateway would initiate contact by telephone with potential customers, as distinguished from "inbound" customers who initiated contact with Gateway.

14.   In the second quarter of 2000, Gateway began an outbound sales initiative in which it contacted prospective customers with lower FICO (credit) scores and offered them financing to purchase PCs.

15.   Todd received advice from personnel employed by ACS and by Your:)Bank.com, among others.

16.   Approximately $91.4 million of Gateway's $2.14 billion in revenues (net sales) for its second quarter of 2000 were generated by sales to customers in Tier 5 and above.

17.   On June 30, 2000, Gateway sold a portion of its consumer loan portfolio to Associates Credit Card Services, Inc. ("Associates"), for $58.4 million.

18.   On June 30, 2000, Gateway loaned $50 million to the parent company of Associates, Associates Corporation of North America ("ACNA").

19.   ACNA repaid Gateway's loan in full with interest.

20.   Gateway issued a press release on July 13, 2000, titled "Gateway Posts Record Second Quarter Earnings."

21.   Gateway issued a press release on July 13, 2000 announcing Gateway's revenues of $2.14 billion, 12% over second quarter 1999, which missed expectations for revenue by $8 million.  Gateway's second quarter 2000 Form 10-Q, filed on August 14, 2000, stated that Gateway's quarterly revenues were $2.14 billion.

22. In September 2000, Gateway entered into a business relationship with VenServ, a company whose primary business was to facilitate financing transactions for small businesses.

23. On September 22, 2000, Gateway and VenServ, reached an agreement whereby VenServ agreed to purchase approximately $21 million of PCs. This agreement was later amended to extend the payment terms to March 31, 2001.

24. Before the end of the third quarter of 2000, Gateway shipped PCs to warehouses for VenServ and recognized revenue of almost $21 million.

25. VenServ entered into the ***Reseller*** Agreement on September 22, 2000, agreeing to purchase almost $21 million worth of PCs for resale. The Reseller Agreement provided that the products were to be shipped to a bonded warehouse leased to VenServ, and that VenServ was to take title upon delivery to the warehouse.

26. In the separate ***Referral*** Agreement, Gateway agreed to several continuing obligations to VenServ, including agreeing to refer customers to VenServ and to lease space and equipment to VenServ.

27. In the third quarter of 2000, a meeting was held at Gateway with Gateway's finance managers and others, including Todd and Manza, to discuss upcoming third quarter results. The purpose of the meeting was to review where Gateway stood on its quarter results forecast, and to discuss revenue generating ideas.

28. On September 29, 2000, Gateway and its third party information technology services provider, Lockheed Martin Integrated Business Solutions ("Lockheed") signed a Modification of their existing agreement.

29. At a third quarter meeting at Gateway with Gateway's finance managers and others, including Todd and Manza, there was a discussion concerning the possibility of selling Lockheed Martin Integrated Business Solutions ("Lockheed") computer equipment used by Lockheed in connection with services it was providing to Gateway. At the time, Lockheed was Gateway's third-party information technology ("IT") services provider and therefore was responsible for

5

managing and servicing Gateway's computer infrastructure.  Gateway and Lockheed had entered into this agreement on July 15, 1999.  As part of that original agreement, Gateway supplied the computer equipment needed to perform the IT services and Lockheed provided personnel to service it.

30. On September 29, 2000, Gateway and Lockheed entered into a modification of the original agreement whereby Gateway sold to Lockheed all rights, title, and interest in its IT computer equipment for $47.2 million.

31. Pursuant to the new service agreement between Gateway and Lockheed, Lockheed was to pay, and did pay, for the equipment in five equal installments totaling $47,258,010.30 over a period of five months, beginning October 30, 2000.  Gateway was to pay monthly "Equipment Provisioning Fees" to Lockheed over a 36 month period commencing October 30, 2000, with an option to prepay the fees by remitting to Lockheed the amount of $47,258,010.30 in full on October 2, 2000.  Gateway in fact did prepay the Equipment Provisioning Fees in full to Lockheed on October 2, 2000.

32. Of the approximately $46 million worth of computer equipment involved in the proposed sale, Gateway-branded equipment represented approximately $14-15 million.  The balance was IBM and Sun servers.

33. On September 30, 2000, Gateway recognized $47.2 million in revenue from the sale to Lockheed.

34. Todd and Manza signed the November 14, 2000, Management Representation Letter presented by Gateway management to PwC in connection with its review of Gateway's third quarter interim financial statements.

35. Gateway issued a  press release on October 12, 2000 titled "Gateway Posts Record Third Quarter Earnings."

36. Todd, together with Gateway's CEO, participated in a conference call with analysts following the October 12 release.

///

6

**VI.**

The following issues of fact, and no others, remain to be litigated upon the trial:

**A.    Contested Facts According to Plaintiff**

1.    Whether Todd:  (1) recklessly or knowingly employed any device, scheme or artifice to defraud[1/]; (2) negligently directly or indirectly made misrepresentations of material fact or omitted to disclose material facts; or (3) negligently directly or indirectly engaged in any transaction, practice, or course of business which operated or would have operated as a fraud or deceit upon a purchaser, in the offer or sale of Gateway securities, with regard to:

   a.    the increase in the dollar volume and portfolio percentage of higher risk consumer loans made to Gateway customers in the second quarter of 2000, ended on June 30, 2000 (the "high-risk consumer loans");  and

   b.    Gateway's sale of a portion of its loan portfolio in June 2000 to ACS and its loan in June 2000 to an ACS affiliate (the "ACS transaction").

2.    Whether Todd, recklessly or knowingly, directly or indirectly[2/]: (1) employed any device, scheme, or artifice to defraud; (2) made any untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) engaged in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of Gateway securities, with regard to:

/ / /

---

[1/]    Defendant Todd contends that in order to prove a claim for fraud under Section 17(a) of the Securities Act, the Commission must prove scienter. *See SEC v. TLC Invs. & Trade Co.*, 179 F. Supp. 2d 1149, 1154 (C.D. Cal. 2001).

[2/]    Defendants contend that in order to prove a claim for fraud under Section 10(b) of the Exchange Act, the Commission must prove scienter. *See SEC v. Rana Research,* 8 F.3d 1358, 1364 (9th Cir. 1993).

a.    The ACS transaction;[3/]

b.    The increase in dollar volume and portfolio percentage of high-risk consumer loans made to Gateway customers in the second quarter of 2000, ended on June 30, 2000;

c.    Gateway's first-time nondisclosure in the third quarter of 2000 of the number of PC units it sold; and

d.    The portion of Gateway's third quarter revenue that was "beyond-the-box" revenue rather than the revenue from the sale of PCs.

3.    Whether Todd and/or Manza, recklessly or knowingly, directly or indirectly[4/]: (1) employed any device, scheme, or artifice to defraud; (2) made any untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) engaged in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of Gateway securities, with regard to:

a.    The increase in the dollar volume and portfolio percentage of high-risk consumer loans made to Gateway customers in the third quarter of 2000, ended on September 30, 2000;

b.    Gateway's sale to Lockheed in the third quarter of 2000 (the "Lockheed transaction"); and

---

[3/]    On October 17, 2006, the Court issued its Order granting Manza's motion *in limine* to exclude evidence regarding Manza's liability for this transaction. For the reasons stated in its Opposition to that motion *in limine*, the Commission continues to contend that Manza's liability with regard to this transaction should be decided by the trier of fact in this action, and reserves its right to appeal from the Court's ruling on Manza's motion *in limine*. The Commission similarly reserves its right to appeal from each of the Court's adverse rulings on any of the parties' motions *in limine*, as well as the Court's adverse rulings on each of the parties' motions for partial or full summary judgment.

[4/]    Defendants contend that in order to prove a claim for fraud under Section 10(b) of the Exchange Act, the Commission must prove scienter. *See SEC v. Rana Research,* 8 F.3d 1358, 1364 (9th Cir. 1993).

      c.     Gateway's sale of computers to VenServ, agreed to in September 2000 (the "VenServ transaction").

4.     Whether: (a) Gateway filed with the Commission a materially false and misleading quarterly report for the second quarter of 2000 and year-end 2000, with regard to the high-risk consumer loans and the ACS transaction; and (b) whether Todd knowingly and substantially assisted Gateway's preparation and/or filing of the report.

5.     Whether: (a) Gateway filed with the Commission a materially false and misleading quarterly report for the third quarter of 2000 with regard to the high-risk consumer loans, the Lockheed transaction and/or the VenServ transaction; and (b) whether Todd and/or or Manza knowingly and substantially assisted Gateway's preparation and/or filing of the report.

6.     Whether (a) Gateway filed with the Commission a materially false and misleading annual report for the year 2000, with regard to the high-risk consumer loans and the ACS transaction; (b) whether Todd and/or Manza knowingly or substantially assisted Gateway's preparation and/or filing of the report with regard to the high-risk consumer loans; and (c) whether Todd knowingly or substantially assisted Gateway's preparation and/or filing of the report with regard to the ACS transaction.[5]

7.     Whether Todd and/or Manza made or caused to be made materially false or misleading statements to PwC and/or omitted to state, or caused other persons to omit to state to PwC, material facts necessary in order to make statements made to PwC, in light of the circumstances under which they were made, not misleading.[6]

---

[5]     As explained in footnote 1, the Commission continues to contend that Manza's liability with regard to this transaction should be decided by the trier of fact, and reserves its right to appeal from the Court's ruling granting Manza's motion *in limine*.

[6]     Defendants object to the Commission's vague description of the contested facts under
(continued...)

8.      Whether (a) Gateway failed to make and keep books, records and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets with regard to the high-risk consumer loans, the ACS transaction, the Lockheed transaction and the VenServ transaction; (b) whether Todd directly or indirectly falsified or caused to be falsified such books, records or accounts, or knowingly and substantially assisted Gateway's failure to make and keep such books, records and accounts with regard to the ACS transaction; and (c) whether Todd and/or Manza directly or indirectly falsified or caused to be falsified such books, records or accounts, or knowingly and substantially assisted Gateway's failure to make and keep such books, records and accounts with regard to the high-risk consumer loans, the Lockheed transaction and the VenServ transaction.[7/]

**B.      Defendants Todd and Manza's Contested Facts**

Todd and Manza contend that the following facts are contested.  Plaintiff contends that, to the extent such facts are relevant, they are simply evidence relating to the determination of the ultimate issues of fact set forth in paragraphs 1-6, above.

---

[6/]      (...continued)
Exchange Act Rule 13b2-2 ("Lying to Auditors").  The Commission has not identified the alleged false and misleading statements.  However, the Court's summary judgment rulings established that the alleged false and misleading statements relate only to the management representation letter provided to PwC by Gateway in November 2000.  Ruling at pp. 18-19.  The Complaint specifically alleges that the defendants violated Rule 13b2-2 with respect to only two of the remaining issues in the case: (a) The dollar volume and portfolio percentage of high-risk consumer loans made to Gateway customers in the third quarter of 2000, ended on September 30, 2000; and (b) Gateway's sale of computer equipment to Lockheed in the third quarter of 2000. (Complaint at 131).

[7/]      Defendants strenuously object to the SEC's December 7, 2006 inclusion of a books and records claim for relief.  The SEC identified its claims in a proposed pretrial order lodged with the Court on August 28, 2006, following the Court's August 1, 2006 rulings on cross-motions for summary judgment.  The books and records claim for relief was not included.  A pretrial conference occurred on September 13, 2006, at which time the SEC requested more time to reduce the trial in light of the rulings.  Only now – 71 days after lodging an agreed-upon pretrial order, and 4 days after the shorter, revised pretrial order was due for lodging – have these abandoned claims resurfaced.

9.    Whether Todd and/or Manza, in doing the acts complained of acted knowingly or with scienter.

10.   Whether Todd and/or Manza, in doing the acts complained of, acted on the advice of Gateway's certified public accountants, auditors, and lawyers.

11.   Whether Todd and/or Manza, in doing the acts complained of, acted in good faith reliance on the corporate decision-making process in place at Gateway.

**1.    Contested Facts Related to Allegations Against Todd**

12.   Todd was the fourth highest ranking officer at Gateway.

13.   Todd reported to Gateway's CEO, Jeffrey Weitzen and others.

14.   During the relevant period, Manza reported to Defendant Todd and others.

15.   Todd resigned from Gateway in January 2001, when founder Ted Waitt returned as CEO.

16.   During his tenure at Gateway, Todd owned no shares of Gateway except for the brief period of time between exercising an option and the sale of that stock.  He exercised no options during Q2 or Q3 of 2000.

17.   Todd received no bonus from Gateway for the year ending 12/31/2000, with the exception of an employment agreement-mandated portion of his severance payment when he left the company in 2001.

18.   To assure that Gateway had the necessary accounting expertise, Todd assisted in and/or oversaw the hiring of several people with public accounting experience: a new Controller (Manza); a new Assistant Controller (Mike Kramer); a new Director of Internal Audit (Meredith Mueller); and Vice President of Compliance and Ethics (Eric Selberg), among others.

19.   When Todd arrived, Gateway had no internal audit department or internal control process.  He created an internal audit department and, with the help of an outside accounting firm, had all of Gateway's controls and control processes audited.

20.   Todd implemented programs to increase visibility of Gateway's performance numbers.

11

21.  Todd properly and completely addressed the concerns that his staff had regarding the accounting of various complex transactions and new business ventures.

22.  Todd kept his superiors informed on a regular basis.

23.  Todd reported negative news about Gateway to Wall Street analysts in a timely fashion.

24.  Gateway would hold conference calls with analysts and investors before the end of a quarter to preannounce results.

25.  Todd knew that Gateway and PricewaterhouseCoopers ("PwC") routinely highlighted to the Audit Committee, Manza, and Todd that it reviewed large, end-of-quarter transactions in performance of its quarterly review obligations to the company.

26.  At all times, Todd relied on 1) his vast and competent business and accounting staff to give him proper advice; 2) Gateway's internal auditors; 3) Gateway's external auditors PwC; 4) Gateway's in-house counsel; 5) Gateway's outside counsel; 6) Gateway's Board of Directors and the Audit Committee; and 7) Gateway's bankers, among others.

27.  Todd did not personally or monetarily benefit from any of the transactions at issue.

28.  Todd helped create an Office of Ethics and Compliance, which implemented an anonymous toll-free hotline for employees to report concerns relating to Gateway's business practices.  This Office also finalized and disseminated a code of conduct, and provided ethics training to Gateway employees worldwide.

29.  Todd implemented programs to increase the visibility of Gateway's performance numbers, including reducing the accounting close cycle in order to move up Gateway's quarterly calls.

30.  Following a discovery by the Internal Audit Department in Q4 2000 of potential revenue recognition fraud in Gateway's Europe, Middle East and Africa Division ("EMEA"), an internal investigation was promptly conducted.  As a consequence

of the internal investigation, key EMEA employees were fired or otherwise disciplined. Todd was instrumental in the execution of an internal investigation to root out wrongdoing in Gateway's overseas operations. Immediately following outside counsel's reporting of the fraud, Todd flew to Europe to discuss the situation with other Gateway executives. Following those discussions, Todd met with the accused employees and handled their discharge.[8]

31. The new management team at Gateway, of which Todd became a part, believed that the PC market would commoditize. (When a product becomes indistinguishable from similar products and consumers buy it on price alone, it becomes a commodity.) This drives down the price and the value of a branded product.

32. To avoid this, Gateway's publicly-stated strategy was to transition its business away from selling single unit PCs (the "box"), to becoming a solutions provider that sold multiple types of "beyond-the-box" technology. The effort was intended to build enough scale before the PC market commoditized.

33. In order to achieve this goal of selling "beyond-the-box," management added several new businesses, including an Internet Service Provider ("ISP") business, an Internet portal business, PC accessories business, a training business for both online and in-classroom training, and a financing business.

34. These new businesses added a significant level of complexity to Gateway's operations. Instead of having the benefit of existing accounting or other expertise in these businesses, Gateway's management had to develop from scratch the appropriate methods to account for these new businesses and transactions.

35. Todd relied on his accounting group and on PwC to define this accounting. As he

---

[8] To the extent these facts are determined to be facts that are a subject of the trial, plaintiff contends it is entitled to introduce evidence of wrongdoing in connection with transactions not listed in paragraphs 1-6 above, including but not limited to the change in methodology for calculating Gateway's loan loss reserve and the AOL, RentWay, ALR reserve and warranty reserve transactions. Defendants dispute this contention.

03 CV 2230 BEN (WMc)

1   was not a CPA, his instructions to his staff were to ensure that the accounting was

2   right, that Gateway was covered for any potential downside exposure, and that

3   PwC had approved the accounting.

4   36.   With respect to the Challenged Transactions, Todd relied upon the advice of

5   PwC, which maintained an office at Gateway's headquarters.

6   37.   Todd solicited PwC's help by:  (1) disclosing to PwC the Q2 sale of its consumer

7   loan portfolio to ACCS and the loan to ACNA, and relying on the fact PwC never

8   raised any issue with the transactions; (2) working with PwC to determine what

9   material disclosures needed to be made regarding the outbound campaign; (3)

10   relying on PwC's adherence to auditing standards for quarterly review

11   procedures, and PwC representations that it reviewed large end-of-quarter

12   transactions and large customer accounts receivable; and (4) seeking PwC's

13   assistance on revenue recognition of the Lockheed transaction and telling PwC to

14   look at the "significant transaction."

15   38.   During the second quarter of 2000, Gateway sold a portion of its consumer loan

16   portfolio to Associates Credit Card Services, Inc. ("Associates"), one of four

17   lenders utilized by Gateway to finance PC purchases by its customers.  The loan

18   package, valued at $54 million, sold for $58.4 million.  Gateway recognized $4.4

19   million of pre-tax profit, which it included in its Q2 2000 financial statements.  It

20   had no effect on revenue. The sale shifted the risk of the loans to Associates,

21   established the portfolio's marketability for future sales and generated a profit.

22   39.   During the second quarter of 2000, Gateway loaned $50 million to Associates

23   Corporation of North America ("ACNA"), Associates' parent company. The loan

24   was negotiated by David Rai of ACS.  Gateway's cost of raising capital was

25   lower than ACNA's cost.  The borrower was AA rated; the loan was made after

26   arms-length negotiations.  ACNA agreed to pay 6.125% interest on the loan.  This

27   interest rate was greater than the rate of return Gateway then earned on its unused

28   cash.  ACNA repaid the loan in full with interest.  The loan was considered a

sound investment of Gateway's idle cash.  Gateway disclosed to PwC the loan during the quarterly review process.

40.   As early as the first quarter of 1999, Gateway personnel discussed the securitization and sale of its loans to computer purchasers.  Gateway wanted to periodically securitize portions of its loan portfolio, and the sale to Associates was the first such sale.

41.   The sale allowed Associates to expand its business with Gateway, and shifted the risk accompanying those loans from Gateway to Associates.

42.   At that time, Gateway's cost of raising capital was lower than ACNA's cost. ACNA agreed to pay 6.125% interest on the loan.  This interest rate was greater than the rate of return Gateway then earned on its unused cash.

43.   Gateway never intended to retain and collect its loan portfolio, but rather to sell it – either outright or in securitized transactions.  To do this, Gateway needed to establish the portfolio's marketability.  A sale of at least $50 million was considered necessary to begin a track record.

44.   The sale of loans to Associates shifted the risk related to these loans from Gateway to Associates.

45.   The sale of loans to Associates generated a profit of $4.4 million for Gateway.

46.   The loan to ACNA was a sound investment of Gateway's idle cash.  The 6.125% interest rate exceeded Gateway's return on its cash investments.

47.   Gateway had nearly $1 billion in cash at the time of the loan to ACNA.

48.   The portfolio sale to Associates and the loan to ACNA were both disclosed to PwC, which in turn reported them to Gateway's Audit Committee in its second quarter review.

49.   Todd reported both the Associates and ACNA transactions and their rationale to Gateway's Board.  At that time, PwC raised no issues or concerns.

50.   The gain on the sale of loans to Associates did not materially overstate gross sales, which grew 12 percent to $2.14 billion year over year.  The gain amounted

15

1   to only $6 million in operating income, approximately .5% of the income

2   projected for the year.  It had an impact of less than $0.01 on earnings per share

3   ("EPS").

4   51.   In the second quarter of 2000, Gateway exceeded analysts' expectations by $0.01.

5   Even without the sale of loans to Associates, analysts' expectations were met.

6   52.   When Todd arrived at Gateway in 1998, the company was investigating ways to

7   market its products and services to consumers with weak credit.  Gateway was

8   interested in gaining the "lifetime value" of these and other customers,

9   recognizing that consumers develop brand loyalty and are likely to follow up a

10  first-time purchase of a PC with future computer and "beyond the box" purchases.

11  53.   Beginning in or about April 1999, Gateway developed relationships with various

12  lenders, including Associates Commerce Solutions, Inc. ("ACS"), a subsidiary of

13  Associates Corporation of North America ("ACNA"), pursuant to which buyers

14  of Gateway computers could finance their purchases.

15  54.   Gateway eventually developed a bank subsidiary, called Your:)Bank.com.

16  55.   Your:)Bank.com, a wholly-owned Gateway subsidiary created in or about late

17  1999, became chartered as a bank by the FDIC in or about January 1, 2001.  John

18  Lawrence Richards (Chief Executive Officer); Larry Newton (Chief Financial

19  Officer); and Erik Bodeen (Chief Credit Officer), among others, were employees

20  of Your:)Bank.com and had experience in banking and credit industries.

21  56.   Gateway's consumer loan portfolio was divided into "Tiers" which related to

22  FICO scores and interest rates charged.   Some customers in higher tiers who

23  qualified for financing under a Gateway outbound campaign received less

24  expensive configurations of Gateway PCs.  This enabled Gateway to increase its

25  profit margin on the sale of the specific-configured units.  One such configuration

26  provided a 39% profit margin, which was twice Gateway's normal margin.  The

27  increased margins reduced the risks of the program by offsetting potential losses

28  from financing sales to more risky borrowers.

57. Gateway also frequently conducted what it termed "outbound" telemarketing campaigns, meaning Gateway would telephone various groups of customers to sell PCs and related products.

**2.   Contested Facts Related to Allegations Against Todd and Manza**

58. Customers who qualified for financing under this initiative received less expensive configurations of Gateway PCs. This enabled Gateway to increase its profit margin on the sale of the specially-configured units. One such configuration provided a 39% profit margin, which was twice Gateway's normal margin. The increased margins reduced the risks of the program by offsetting potential losses from financing sales to more risky borrowers.

59. Potential losses from the outbound sales program were estimated in advance to be between 28% and 50%.

60. Gateway was properly and fully reserved for potential losses.[9/]

61. The outbound sales initiative and related loan program was viewed as profitable to Gateway in the long-term because first-time buyers who purchased a Gateway PC would be more likely to make future purchases from Gateway. In addition, the outbound program was expected to help Gateway in the short term in that PC buyers were substantially more likely to follow up Gateway computer purchases with software purchases.

62. Gateway continued the outbound sales initiative into the third quarter. The program accounted for only 3.2% of sales for that quarter.

63. Gateway disclosed in its financials the consumer financing program and that there were possible risks associated with the financing. Gateway's 10-Q Note 2 specifically detailed the possibility of losses with respect to this portfolio. PwC

---

[9/]     To the extent that this fact is determined to be a subject for the trial, plaintiff contends it is entitled to present evidence regarding the defendants' failure to disclose Gateway's change in methodology for calculating its loan loss reserve and consequent reduction in the reserve. Defendants dispute this contention.

1   reviewed the disclosure and approved it.

2   64.   Gateway's accounting for the outbound sales initiative was in all respects correct.

3   65.   On July 15, 1999, Gateway and Lockheed entered into an agreement whereby

4         Gateway outsourced its IT requirements to Lockheed.

5   66.   As part of that original agreement, Gateway supplied the computer equipment

6         needed to perform the IT services and Lockheed provided personnel to service it.

7         Gateway retained ownership of the computer equipment.

8   67.   Neither Todd nor Manza were involved in the negotiation of the July 15, 1999

9         agreement, but were aware of control issues relating to purchase and use of the

10        equipment.

11  68.   From a business perspective, Todd and Manza were concerned about the

12        arrangement with Lockheed.  Todd and Manza believed that Lockheed should be

13        obligated to justify the purchase of the equipment it was servicing with Gateway's

14        review and approval.

15  69.   This obligation would make it more likely that Lockheed and Gateway would put

16        new IT equipment into service only when necessary.  Mike Kramer, Gateway's

17        Assistant Controller, had also expressed views that were consistent with Manza's

18        concerns and noted that in all prior arrangements, the provider of the service

19        controlled the equipment.

20  70.   Under the July 15, 1999 agreement, Lockheed could order new PCs and servers at

21        any time.  Payment for the equipment was Gateway's responsibility under the

22        contract.  Todd believed that the agreement had not been subjected to a rigorous

23        economic analysis.

24  71.   The Lockheed arrangement was discussed at a September 2000 meeting of

25        Gateway managers of the Finance Department.  The group discussed whether

26        companies with whom Gateway did business were fulfilling their computer needs

27        by purchasing equipment from Gateway.

28  72.   Manza expressed his concerns about the nature of the existing arrangement with

18

1   Lockheed and his desire that the agreement be amended to require Lockheed to
2   purchase the computer equipment it was servicing.  Manza proposed changing the
3   relationship on a going-forward basis so that Lockheed would be required to
4   purchase from Gateway all future PCs and servers.  The contract between
5   Gateway and Lockheed had been amended several times.  Manza, Tom Reedy
6   (Gateway's Treasurer), and James Pollard (Gateway's Chief Information Officer)
7   were assigned to negotiate the sale of the computer equipment; Todd was not
8   involved in the negotiations.

9   73.   Selling the existing equipment to Lockheed would allow Gateway to transfer
10   ownership.  In addition, a transfer would eliminate Lockheed's ability to request
11   new PCs and servers at any time, without paying for or controlling this
12   equipment.  Gateway would save approximately 7% in interest charges by
13   electing to pre-pay the hardware costs rather than paying monthly installments
14   over the life of the agreement, which generated $5 million in savings over the life
15   of the agreement.

16   74.   Todd told Manza to investigate whether Lockheed would agree to a contract
17   change.  The Gateway-Lockheed contract had already been amended several
18   times.

19   75.   Manza, Tom Reedy (Gateway's Treasurer), and James Pollard (Gateway's Chief
20   Information Officer) were assigned to negotiate the sale of the computer
21   equipment; Todd was not involved in the negotiations.

22   76.   Theresa Knutson, who worked in Pollard's department, prepared a list of the
23   equipment that Lockheed was currently using to determine the total amount of the
24   sale.

25   77.   Manza and Todd originally believed all the equipment that Lockheed was using
26   was exclusively Gateway-branded personal computers and servers.

27   78.   From Knutson's list, however, they learned the sale included IBM AS400s and
28   Sun servers in addition to 1,000 Gateway PCs and nearly 1,000 Gateway servers.

79. During the relevant time period, Gateway sold refurbished products and non Gateway-branded products, in its Country Stores retail outlets.

80. After fully analyzing the transaction, Manza believed it was appropriate to recognize revenue on the Gateway-branded equipment and non-branded equipment because of the long-standing accounting treatment of both types of equipment located in Gateway's Country Stores. The Country Stores were Gateway's retail outlet for seeing, testing, ordering, and buying computers and computer-related equipment. Gateway's display equipment in its Country Stores was included on Gateway's balance sheet in the category "Other Assets." Once replaced, the display equipment was returned to inventory, refurbished and sold. Once sold, revenue was recognized. Manza viewed the situation with Lockheed analogously. In addition, he believed that the accounting treatment was appropriate under accounting standards dealing with revenue recognition.

81. PwC was aware of and had approved the long-standing accounting treatment relating to Gateway's display equipment in its Country Stores.

82. Todd specifically directed Manza to make sure that PwC was comfortable with the accounting for the transaction, which Manza did. Manza specifically told the PwC audit partner, Michael McLaughlin, that the Lockheed sale "was a significant transaction" and that PwC should look at it.

83. Both Todd and Manza talked separately with McLaughlin of PwC about the Lockheed transaction.

84. PwC did in fact review the transaction. Among numerous documents demonstrating the extent of this review is, most significantly, a PwC workpaper specifically reflecting that PwC staff accountants had observed that the transaction had been booked as a trade receivable (a revenue account), and had decided to "pass" on requiring the transaction to be reclassified because it was de minimis. The determination of the staff accountants that the transaction should not have been booked as revenue was not communicated to Manza or Todd. In

20

fact, John Todd specifically asked the PwC engagement partner, Michael McLaughlin, about the Lockheed transaction and whether he was comfortable with "revenue on the transaction" and McLaughlin told Todd that he was.

85.   Numerous additional documents demonstrate PwC's awareness of the fact that Gateway had booked revenue in connection with the Lockheed transaction.  For example, in its third quarter review, as in all other quarters, PwC requested a "flux" report from Gateway.  A flux report compares balances from quarter to quarter in various receivable accounts, and it describes the reasons that various accounts increased or decreased when compared to the prior quarter end.

86.   The flux report, provided timely to PwC, reflected Gateway's treatment of the Lockheed sale as revenue.  In fact, a footnote to the report specifically identifies the Lockheed sale as the primary reason for the increase in trade accounts receivable.

87.   PwC also possessed a list of the top ten accounts receivable balances which listed the Lockheed sale as the highest outstanding balance at $47 million.  This alerted PwC that Gateway had treated the transaction as a revenue item.

88.   Tennille Tunnell, a PwC auditor in the third quarter review, specifically asked to see the journal entry in the Lockheed sale in Gateway's general ledger. Kelli Richard, a manager in Gateway's Corporate Finance Group, showed Tunnell the journal entry on her computer screen.  That entry identified the Lockheed sale as revenue.

89.   Julie Paustian, a Manager in Gateway's Americas Accounting and CPA, always gave PwC the trial balance, which PwC would then review as part of its normal quarterly review procedures.  The trial balance shows specifically the total amount of fixed assets sold in the quarter, the proceeds from those sales and the gain or loss on the sales (as a component of other income caption of the income statement).  The trial balance for the third quarter shows a very minimal amount of proceeds from Gateway's sale of fixed assets in the third quarter (about

1       $100,000) with net book value of assets sold at about the same amount.

2   90.   In addition, every quarter PwC received and reviewed the Consumer Operating

3         Review with Lee Bird, the CFO of Gateway's consumer business unit.  The third

4         quarter Consumer Operating Review specifically lists the *revenue* from the

5         Lockheed sale attributable to the consumer business unit.

6   91.   PwC's work papers show Gateway's accounts receivables increased by

7         $85 million (or 18.5%) during the third quarter and much of that was attributable

8         to the fact Gateway sold approximately $40 million of computer equipment to

9         Lockheed.

10  92.   SEC Form 10-K has no specific requirement as to whether the sale of property

11        must be recognized as other income or as revenue.  It states that the gain or loss

12        from the sale must be included in net income.  As reflected on Gateway's Q3

13        2000 Form 10-Q, Gateway's "other income" and its net sales, including PC sales,

14        are both included in the calculation of net income.

15  93.   VenServ intended to make financed sales of PCs to consumers with sub-prime

16        credit.  Gateway thought the relationship would allow it to reach a portion of the

17        sub-prime market.

18  94.   The VenServ-Gateway relationship had two components:  Gateway's standard

19        "Reseller Agreement" and a separate Non-Exclusive Consumer Referral Program

20        Agreement (the "Referral Agreement").

21  95.   During Q3 2000, neither Todd nor Manza were aware of the Referral Agreement

22        or of its obligations.  They were not involved in its negotiation or execution.  In

23        fact, Manza did not discover the existence of the Referral Agreement and its

24        performance obligations until after the January 2001 earnings release.  Indeed, on

25        January 15, 2001, four days after the earnings release, Manza sent Scoular, who

26        was involved in the negotiation of the VenServ Reseller Agreement, an email

27        asking whether there was an employee lease agreement with VenServ.  The

28        employee lease arrangement with VenServ was contained in the Referral

22

1      Agreement, and the response to this inquiry was the first time Manza realized that

2      the document existed, and considered its contents.

3   96.    Todd did not sign the Agreements.

4   97.    When it came to light that some Gateway employees had used VenServ's

5      computers to fill another customer's orders, Todd wanted to fire those who were

6      responsible.  Todd contacted those parties and told them that the inventory was

7      VenServ's property, that they were not to touch it again, and that doing so would

8      be grounds for termination.  Todd also instructed manufacturing personnel to

9      implement whatever additional steps were necessary to ensure that VenServ

10     inventory remained segregated.

11  98.    It was Todd's understanding that PwC was aware of the VenServ transaction and

12     that it concurred with revenue recognition.

13  99.    Each quarter PwC reviewed carefully all large transactions and large accounts

14     receivable balances at quarter end, and the VenServ transaction fit both criteria.

15     VenServ's receivable as of September 30 was one of the largest on Gateway's

16     books.

17  100.   PwC raised no issue with the VenServ transaction during its SAS 71 Q3 review.

18                   **VII.**

19    The exhibits to be offered at trial during each parties case-in-chief are as follows:

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|----------|----------------|-------------|---------------|------------------------|
| 1028 | Joint | | | 01/00/2001<br><br>G000597<br><br>First Amendment to Gateway Authorized Reseller Agreement and to Consumer Referral Program Agreement |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 1029 | Joint | | | 09/22/2000<br><br>G000572 - G000585<br><br>Gateway Authorized Reseller Agreement (between Gateway Companies, Inc. and VenServ, Inc.) |
| 1030 | Joint | | | 09/22/2000<br><br>VS 0014 - VS 0023<br><br>Non-Exclusive Consumer Referral Program Agreement (between Gateway Companies, Inc. and VenServ, Inc.) |
| 1031 | Todd Manza | | | 08/00/2000<br><br>G000557 – G000569<br><br>Non-Exclusive Third Party Lessor Agreement (between Gateway Companies, Inc. and VenServ, Inc.) |
| 1032 | Joint | | | 09/22/2000<br><br>VS 0024 - VS 0025<br><br>Security Agreement between VenServ and Gateway |
| 1034 | SEC | | | 09/22/2000<br><br>G000586<br><br>Purchase Order re "Bill to: VenServ" for $19,995,581.00 |
| 1038 | Joint | | | 01/12/2001<br><br>G010249 - G010250<br><br>Letter from John Todd to Michael Rehling (VenServ) |

24

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 1039 | Joint | | | 01/15/2001<br><br>PWC 005711 - PWC 005714<br><br>Fax coversheets and letter from VenServ to PWC re confirmation of balance owed to Gateway |
| 1093 | SEC | | | 09/23/2000<br><br>BB 000180 – BB 000182<br><br>Email from Beth Biddle to Ted Valle |
| 1095 | Joint | | | 10/03/2000<br><br>RT 000191 - RT000200<br><br>Fax to Rick Taylor of Modification #4 to the Technology Services Agreement; Agreement |
| 1099 | SEC | | | 09/27/2000<br><br>WG 0001585<br><br>Sisley email to Gabaly re: Lockheed |
| 1183 | SEC | | | 00/00/0000<br><br>G270249-G270251<br><br>Letter from Jeff Weitzen to fellow Gateway employee re: MIP and bonus |
| 2012 | Todd Manza | | | 11/18/1999<br><br>G003185 – G003187<br><br>Letter from Rai to Scoular re: Gateway Tier Strategy Proposal |
| 2015 | SEC Todd | | | 06/27/2000<br><br>A 00072 – A 00080<br><br>Private Label Business Opportunity (Sale of loans to ACS) |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2016 | SEC Todd | | | 06/30/2000<br><br>A 00003 – A 00009<br><br>Loan Agreement - ACS and Gateway |
| 2017 | SEC Todd | | | 06/30/2000<br><br>A 00396 – A 00414<br><br>Purchase Agreement:  Gateway and Associates Credit Card Services |
| 2018 | SEC | | | 06/30/2000<br><br>A 00391 – A 00393<br><br>Email from Rai re: Gateway closing schedule |
| 2036 | SEC | | | 05/24/2000<br><br>A 00755 – A 00756<br><br>Email with attachment from R. Danecker to: Bodeen; Storr re: Buy Deeper Options |
| 2037 | SEC | | | 06/01/2000<br><br>A 00757<br><br>Letter from John L. Richards to S. Rai re: risks associated with extending credit |
| 2079 | Todd Manza | | | 10/20/2000<br><br>G205581 - G205584<br><br>Audit Projects Overview (Internal Audit) |
| 2098 | SEC | | | 09/12/2000<br><br>G148759<br><br>Larry Richards email re: update on Qtr end |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2123 | SEC | | | 02/12/2001<br><br>G242129 - 242133<br><br>Email with attachment from E. Bodeen to M. Scoular re: white paper |
| 2137 | SEC | | | 05/16/2000<br><br>G229462 - G229463<br><br>Email from M. Scoular to J. Todd re: Calling Lists |
| 2139 | SEC<br>Todd | | | 05/25/2000<br><br>G218128 - G218134<br><br>2nd Quarter Initiative |
| 2141 | SEC | | | 08/17/2000<br><br>G148628 - G148639<br><br>Email from M. Scoular to L. Richards; L. Newton; Bodeen; S. Storr re: C:\MyDocuments\Apowerpoint\00 Q3 PowerPoint\Todd  8-17-00 SLC overview.ppt |
| 2144 | SEC | | | 09/12/2000<br><br>G148640<br><br>Email from M. Scoular to M. Rehling re: $10,000,000 consumer sale |
| 2150 | Todd<br>Manza | | | 09/05/2000<br><br>G249311<br><br>Email from R. Manza to M. Scoular re: PWC Meeting |
| 2151 | SEC | | | 06/03/2000<br><br>G229573<br><br>Email from J. Todd to M. Scoular re: Selling assets |

27

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2174 | SEC | | | 10/03/2000<br><br>G031454 - G031455<br><br>Email from J. Paustian to M. Kramer; R. Manza; T. Knutson re: LM transaction/cogs entry |
| 2187 | Todd Manza | | | 09/05/2000<br><br>G249324 - G249332<br><br>Email with attachments from R. Manza to M. Scoular re: PWC Presentation |
| 2189 | Todd Manza | | | 11/27/2000<br><br>G026346 - G026348<br><br>Loan History PWC Email from V. Peerbolte to K. Richard & M. Rasic re: Consumer loan Losses |
| 2201 | Todd Manza | | | 05/15/2000<br><br>PWC027542 - PWC027545<br><br>PWC Work paper re Initial Quarter Interim Review re obtain the loan loss reserve analysis to perform various audit functions (listed) |
| 2206 | Todd Manza | | | 02/25/2001<br><br>PWC027839 - PWC027841<br><br>PWC Work paper re 2nd Quarter Interim Review re obtain loan loss reserve analysis |
| 2207 | Joint | | | 08/16/2000<br><br>PWC027711 - PWC027713<br><br>Work Paper: Q2 - Read client documents |
| 2208 | Joint | | | 06/27/2000<br><br>PWC027917 - PWC027919<br><br>Work Paper: Q2 - Quality of Earnings |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2212 | Joint | | | 09/21/2000<br><br>PWC030981.3085 - PWC030981.3086<br><br>Work Paper: Q3 - Inquire about property, plant, and equipment procedures. |
| 2213 | Joint | | | 09/21/2000<br><br>PWC028003 - PWC028005<br><br>Work Paper: Q3 - Read client documents |
| 2218 | Todd<br><br>Manza | | | 03/01/2001<br><br>PWC028115 - PWC028118<br><br>PWC Work paper re 3rd quarter Interim Review re review of loan loss provision |
| 2231 | Todd Manza | | | 09/06/2000<br><br>PWC019558<br><br>PWC Memo from K. Duffner to Files/ Gateway re: Consumer Financing Meeting |
| 2236 | SEC | | | 11/01/2000<br><br>PWC006696 - PWC006698<br><br>Email from D. Foote to M. Rasic re: NYTimes.com Article: Some Gateway Numbers Stay Inside the Box |
| 2237 | SEC | | | 01/21/2001<br><br>PWC030981.1396 - PWC030981.1410<br><br>Work Paper: Obtain support for Bill and Hold relationships - VenServ |
| 2238 | SEC | | | 12/31/2000<br><br>PWC 000893.1 - 000893.4<br><br>Work Paper: Obtain support for Bill and Hold relationships - VenServ |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2255 | SEC | | | 09/28/2000 G326876 Email from R. Manza to P. Peterson; M. Kramer; J. Paustian; C. Stiles; A. Clardy re: Lockheed Transaction |
| 2256 | SEC | | | 09/29/2000 G326877 Email from R. Manza to J. Paustian & M. Kramer re: Lockheed Trans Information - v3.xls |
| 2258 | Manza | | | 10/09/2000 G326968 Email from J. Paustian to R. Manza re: Final Versions of the Lockheed Modification and Equipment List |
| 2259 | SEC | | | 10/30/2000 G327124 Email from R. Manza to T. Knutson; J. Paustian; A. Heckart; M. Suhr; T. Reedy; J. Pollard re: IBM Information |
| 2261 | SEC | | | 11/27/2000 G315592 Email from T. Knutson to J. Paustian re: Sale of Fixed Assets |
| 2265 | Todd Manza | | | 12/21/2000 G031173 Gateway/LMC Equipment Sale Transaction |

30

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2267 | SEC | | | 10/12/2000<br><br>G033353 – G033369<br><br>Analyst Call transcript - Gateway Moderator Marlys Johnson 3:30 pm MT (meeting minutes/script) |
| 2286 | Todd Manza | | | 11/19/1999<br><br>G321383 - G321432<br><br>Email with attachments from J. Paustian to B. Holiday re: risks opportunities as of 11/19 |
| 2290 | Todd Manza | | | 05/22/2000<br><br>G328497 - G328508<br><br>Email with attachments from J. Paustian to R. Manza re: RO-confidential |
| 2291 | Todd Manza | | | 06/12/2000<br><br>G329619 - G329630<br><br>Email with attachment from J. Tennant to J. Paustian re: R & O's |
| 2322 | Todd Manza | | | 03/02/2001<br><br>PWC026506 - PWC026508<br><br>Report re PWC's Consumer Financing Receivable Reserve Estimate - Summary & Conclusion |
| 2326 | Todd Manza | | | 12/31/2000<br><br>PWC026502 - PWC026505<br><br>Report re PWC's Consumer Financing Receivable Reserve Estimate - Summary & Conclusion (Consumer receivables) |
| 2327 | SEC | | | 01/19/2001<br><br>PWC026453 - PWC026455<br><br>Work Paper: Revenue Recognition Matters (Bill & Hold) |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2328 | SEC | | | 00/00/0000<br><br>PWC016458 - PWC016461<br><br>Handwritten Notes ref. R. Manza, P. Avesian , J. Todd re: GW wanted VenServ to be able to sell beyond the box |
| 2333 | Todd Manza | | | 02/22/2001<br><br>PWC026456 - PWC026460<br><br>Memo from Peerbolte to Gateway 2000 Audit Files re RentWay revenue transactions - PWC agrees with Gateway accounting on RentWay shipments to 3rd party warehouse |
| 2334 | SEC | | | 02/21/2001<br><br>PWC026464 - PWC026465<br><br>Memo from Peerbolte to Gateway 2000 Audit Files re VenServ revenue transactions PWC disagrees with Gateway's recognition of revenue |
| 2349 | Todd Manza | | | 01/04/2001<br><br>PWC013637 – PWC013645<br><br>PWC Memo from M. McLaughlin & V. Peerbolte to M. Kramer & K. Richard re: Revenue recognition - servicing rights |
| 2352 | SEC | | | 01/16/2001<br><br>PWC016145 - PWC016153<br><br>Status Report to the Audit Committee of the Board of Directors on our audit of the Consolidated Financial Statements of Gateway, Inc. |
| 2353 | SEC | | | 01/17/2001<br><br>PWC016557 - PWC016558<br><br>PWC Memo from V. Peerbolte to Gateway Files re: Gateway Audit Committee meeting 1/16/2001 |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2366 | SEC | | | 05/30/2000<br><br>G155763 - G155764<br><br>Email with attachments from L. Richard to E. Bodeen re: Financing Initiatives - Q2 |
| 2367 | SEC | | | 05/30/2000<br><br>G148643<br><br>Email from S. Storr to E. Bodeen re: No-Hit/Decline Thins Prescreen |
| 2368 | SEC | | | 06/08/2000<br><br>G148677<br><br>Email from E. Bodeen to L. Richards re: $20mm Hard stop |
| 2370 | SEC | | | 06/13/2000<br><br>G155711 - G155713<br><br>Email from L. Richards to E. Bodeen re: First 5 verified |
| 2372 | SEC | | | 00/00/0000<br><br>G148678 - G148690<br><br>Charts: Gateway Loan Analysis |
| 2376 | SEC | | | 07/28/2000<br><br>G148182<br><br>Email from C. Holtz to J. Todd re: Banking |
| 2377 | SEC | | | 09/20/2000<br><br>G148676<br><br>Email from E. Bodeen to S. Storr re: Q2 vs. Q3 APD programs |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2378 | SEC | | | 10/06/2000<br><br>G201262 - G201267<br><br>Email with attachments from E. Bodeen to L. Richards, M. Scoular, S. Storr re: Revised data for John and Cliff |
| 2385 | SEC | | | 06/07/2000<br><br>G155736<br><br>Email from L. Richards to E. Bodeen re: Results from 6/5 |
| 2389 | SEC | | | 06/19/2000<br><br>G155707 - G155708<br><br>Email from L. Richards to E. Bodeen re: Updated Master Call List |
| 2396 | SEC | | | 07/28/2000<br><br>G134535<br><br>Email from R. Manza to J. Todd re: Banking |
| 2398 | SEC | | | 09/05/2000<br><br>G133998 - G134007<br><br>Email with attachments from R. Manza to M. Scoular re: PWC Presentation |
| 2400 | Todd | | | 12/13/2000<br><br>G133575 – G133577<br><br>Email with attachments from M. Kramer to K. Richard, J. Augustin & R. Manza re: PWC – Loss Reserves Portfolio Balances by Tier. |
| 2402 | SEC Todd | | | 10/25/2000<br><br>G134190<br><br>Email from R. Manza to K. Richard re: Financing Receivables |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2409 | Todd Manza | | | 10/13/2000<br><br>G134593 - G134594<br><br>Email from R. Manza to J. Hinds, J. Tennant, T. Parmenter, J. Rasmussen, D. Doan re: RentWay/VenServ |
| 2413 | SEC | | | 11/09/2000<br><br>G134271 - G134272<br><br>Email from R. Manza to J. Todd re: VenServ to RentWay inventory proposal |
| 2414 | SEC | | | 11/28/2000<br><br>G134336 - G134339<br><br>Email from R. Manza to J. Tennant, S. Storr & L. Bird re: VenServ Storage Charges |
| 2415 | SEC | | | 12/11/2000<br><br>G133706<br><br>Email from M. Scoular to J. Todd & R. Manza re: Need Response No Later That Weds. VenServ |
| 2417 | SEC | | | 09/22/2000<br><br>G134102<br><br>Email from R. Manza to T. Knutson re: Lockheed Potential Deal |
| 2418 | SEC | | | 09/25/2000<br><br>G134105 - G134106<br><br>Email from with attachment R. Manza to J. Pollard, T. Reedy, T. Bradley, J. Todd re: Lockheed |
| 2419 | SEC | | | 09/26/2000<br><br>G134587<br><br>Email from R. Manza to M. Kramer re: Lockheed |

35

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2420 | SEC | | | 09/29/2000<br><br>G134137 - G134161<br><br>Email with attachments from R. Manza to J. Paustian & M. Kramer re: Lockheed Trans Information |
| 2423 | SEC<br>Todd | | | 06/06/2000<br><br>G229525 - G229525.14<br><br>Email with attachment from M. Scoular to J. Todd re: $50,000,000 sale |
| 2439 | SEC | | | 02/03/2000<br><br>PWC023420 - PWC023421<br><br>Email from M. McLaughlin to E. Kearns re: Gateway discussion outline |
| 2440 | SEC | | | 05/22/2000<br><br>PWC006776 – PWC006778<br><br>Email from M. McLaughlin to M. Mohr re: Gateway |
| 2441 | SEC | | | 08/09/2000<br><br>PWC023361 - PWC023364<br><br>Email with attachment from E. Kearns to M. McLaughlin, F. Doyle, D. Almeida re: John Todd Update |
| 2442 | SEC | | | 08/17/2000<br><br>PWC031060<br><br>Email from M. McLaughlin to F. Doyle, D. Almeida & J. Goodwin re: Gateway action items |
| 2443 | SEC | | | 09/11/2000<br><br>PWC006785 – PWC006786<br><br>Email from D. Almeida to M. Mohr & T. Insley re: Follow-up meeting with J. Todd |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2444 | Joint | | | 09/15/2000<br><br>PWC006681 – PWC006689<br><br>Engagement Letter from PWC to J. Todd |
| 2445 | Joint | | | 00/00/0000<br><br>PWC030446 -PWC30469 0<br><br>Gateway 2000 Worldwide Audit Plan Prepared for the Audit Committee of the Board of Directors |
| 2448 | Todd Manza | | | 01/18/2000<br><br>PWC033336 - PWC033359<br><br>Report to the Audit Committee of the Board of Directors: 1999 Audit |
| 2453 | Todd<br><br>Manza | | | 12/31/1999<br><br>PWC031045.2435 – PWC031045.2437<br><br>Work Paper: Consumer Financing |
| 2458 | SEC | | | 06/27/2000<br><br>PWC030981.2921 - .PWC030981.2936<br><br>Work Paper: Audit Committee Presentation |
| 2459 | SEC | | | 08/14/2000<br><br>PWC005211 - PWC005212<br><br>Letter from Gateway J. Weitzen, J. Todd & B. Manza to PWC re: interim consolidated financial statements of Gateway, Inc. (Q2 Management Representation Letter) |
| 2464 | SEC | | | 11/02/2000<br><br>G234849 - G234551<br><br>Email w/ attachments from J. Jeans re: Q3 MIP/AIP Results and Q4 MIP/AIP Objectives |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2465 | SEC | | | 11/14/2000<br><br>PWC005354 - PWC005355<br><br>Letter from Gateway J. Weitzen, J. Todd & B. Manza to PWC re: review of the interim consolidated financial statements (Q3 Management Representation Letter) |
| 2466 | Joint | | | 09/21/2000<br><br>PWC030981.3144 – PWC030981.3157<br><br>Work Paper: Audit Committee Presentation |
| 2467 | Todd Manza | | | 03/00/2000<br><br>PWC 030981.3026.1 - PWC030981.3026.24<br><br>Financial Statement Disclosure Requirements Form 10-Q Checklist |
| 2468 | Todd Manza | | | 09/30/2000<br><br>G107087 - G107117<br><br>Gateway Third Quarter 2000 Form 10-Q |
| 2470 | SEC | | | 10/16/2000<br><br>PWC023571 - PWC023575<br><br>Email from M. McLaughlin to D. Almeida, J. Goodwin re: Gateway - Silicon Investor |
| 2473 | SEC | | | 01/04/2001<br><br>PWC011192<br><br>Email from M. McLaughlin to D. Almeida re: as discussed |
| 2480 | SEC | | | 02/27/2001<br><br>PWC006041-PWC006048<br><br>Management Representation Letter to PWC from Theodore Waitt, Joseph Burke, and Robert Manza (re 2000 audit) |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|----------|----------------|-------------|---------------|------------------------|
| 2485 | Todd Manza | | | 09/22/2000<br><br>G033296 - G033305<br><br>Non-Exclusive Consumer Referral Program Agreement between Gateway and VenServ |
| 2486 | SEC | | | 10/23/2000<br><br>G350053 - G350061<br><br>Email from Mark Scoular to Bob Manza and Kelli Richard re: You should be aware of this. Attached is NY Times information |
| 2487 | SEC | | | 10/25/2000<br><br>G346553 - G346554<br><br>Email from Kelli Richard to Bob Manza re: Financing Receivables |
| 2488 | Todd Manza | | | 11/13/2000<br><br>G346563 - G346564<br><br>Email from Kelli Richard to Meredith VanDixhorn (Mueller) re: FW: New Financing note.  Attached is finance receivable information |
| 2501 | Todd Manza | | | 09/19/2000<br><br>G357095 - G357101<br><br>Email from Denise Collins to Peter Kwan, Paul Heath, Kurt Tjaden, Mike Swalwell, John Conway, Edward Neiheisel, Peggy Rebstock, Julie Paustian, US Financial Management, Kelli Richard, Mark Suhr, Edgar Mendez, Brad Sparks, Theresa Knutson, Audrey Veitas, Geoff Obeney, Angela Williamson, Lydell Husmann, Cc: to Bob Manza, Kevin Herde, Meredith VanDixhorn, re: Accounting for Asset Impairment Policy, and attached Global Financing Policies Document |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|----------|----------------|-------------|---------------|----------------------|
| 2502 | SEC | | | 07/06/2000<br><br>G393953 - G393955<br><br>Email from Kelli Richard to John Todd and Brad Holiday re: Look at the first tab.  Adjustments are attached. |
| 2503 | SEC | | | 07/06/2000<br><br>G393960 - G393963<br><br>Email from Kelli Richard to John Todd and Brad Holiday re: Look at 7-6 post JT tab.  Adjustments are attached. |
| 2504 | SEC | | | 07/06/2000<br><br>G393964 - G393969<br><br>Email from Kelli Richard to John Todd and Brad Holiday re: Look at post JT (3).  Adjustments are attached. |
| 2505 | SEC | | | 07/07/2000<br><br>G393984 - G393985<br><br>Email from Kelli Richard to John Todd, Cc: to Bob Manza, Brad Holiday, and Mike Kramer, re final numbers.  Gateway summary P & L 6/30/2000 is attached. |
| 2506 | Joint | | | 07/11/2000<br><br>G370363 - G370424<br><br>Email from Roberta Hussey to Kelli Richard.  Attached is Board of Directors Financial Update 7/11/2000. |
| 2507 | SEC | | | 07/28/2000<br><br>G135829 - G135837<br><br>Email from Kelli Richard to Bob Manza.  General Ledger adjustments spreadsheet is attached |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2508 | Joint | | | 08/09/2000<br><br>G133953 - G133969<br><br>Email from Bob Manza to Denise Collins re: FW: 10Q.  (10Q for quarter ended 6/30/2000 is attached.) |
| 2519 | SEC Manza | | | 10/07/2000<br><br>G355034 - G355035<br><br>Email from Julie Paustian to Kelli Richard, Cc: to Bob Manza and Mike Kramer, re: LM Entry |
| 2521 | SEC | | | 02/01/2001<br><br>G352568<br><br>Email from Theresa Knutson to Kelli Richard re: Sale of Fixed Assets |
| 2522 | Manza | | | Email from Julie Paustian to Ron Thurman, John Tenant, and Bob Manza, CC'd to Kelli Richard and Mike Kramer, re: ALR workforce intangible, and attached memorandum. |
| 2523 | Todd Manza | | | 08/24/2000<br><br>G376149-G376150<br><br>Email from Mike Kramer to Bob Manza and Kevin Herde, CC'd to Kelli Richard, re: Draft Policy on Accounting for Asset Impairment |
| 2526 | Todd Manza | | | 09/21/2000<br><br>G372932 - G372938<br><br>Email from Gene. J. Schroeder to Paustian and Kelli Richard; cc to Foote and Duffner (PWC) re Q3 work paper request list (attached) |
| 2527 | SEC | | | 10/03/2000<br><br>G347514 - G347515<br><br>Email from Amanda Clardy to Kelli Richard. Attached is Q3 2000 revenue |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2529 | SEC Manza | | | 11/07/2000<br><br>G133525 - G133542<br><br>Email from Kelli Richard to Bob Manza re: 10Q attached.  10Q for period ended 9/30/2000 is attached. |
| 2530 | Todd Manza | | | 07/31/2000<br><br>G135838-G135851<br><br>Email from Julie Paustian to Bob Manza, Cc: to Mike Kramer and Kelli Richard, re: R/O Worksheet, attached is opportunities/risks worksheet |
| 2531 | Todd Manza | | | 11/27/2000<br><br>G133599 - G133617<br><br>Email from Julie Paustian to Kelli Richard, Cc: to Bob Manza, Mike Kramer, and John Tennant, re R/O for October.  Attached is the risks/opportunities worksheet for October |
| 2537 | Todd Manza | | | 10/31/2000<br><br>G348578 - G348579<br><br>Email from Julie Paustian to Bob Manza, Mike Kramer, and Alan Heckart, Cc: to Kelli Richard, re: Q4 accounting, Q4 accounting worksheet is attached |
| 2538 | SEC | | | 11/13/2000<br><br>G354718 - G354719<br><br>Email from Julie Paustian to Kelli Richard, re: October Margin |
| 2552 | SEC | | | 06/09/2000<br><br>G148181<br><br>Email from Steve Storr to Larry Richards re: Risk issues on the Santa 433 list |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2555 | SEC | | | 06/26/2000 <br><br> G403082 - G403100 <br><br> Email to Lisa Matherne, John Todd, Bart Brown, Lana Edwards from Steve Storr re: Jeff W. Presentation - Consumer Financing Update |
| 2560 | SEC | | | 09/07/2000 <br><br> G249436 <br><br> Email from Steve Storr to John Todd and Lana Edwards, Cc: to Mark Scoular and Bart Brown, re: FW: outbound call summary for 9/5 |
| 2562 | SEC | | | 11/03/1998 <br><br> G444677 - G444678 <br><br> Employment agreement between Gateway and John Todd |
| 2564 | SEC | | | 08/01/2000 <br><br> G444654 - G444660 <br><br> Employment agreement between Gateway and John Todd commencing 08/01/2000 |
| 2565 | SEC | | | 01/18/2000 <br><br> G413004 - G413009 <br><br> Email from John Renfro to Team Gateway, CC'd to Greg Miner, Mike Vishnu, Don Ham ill, Ron Chan, and Gary Gland on, re: Y2000 MIP/AIP, and attached MIP documents |
| 2568 | SEC | | | 01/30/2001 <br><br> G444650 <br><br> Letter from William Elliott to John Todd re: This letter constitutes Notice of Termination |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2569 | SEC | | | 01/30/2001 <br><br> G444651 <br><br> John Todd letter resigning from any and all positions and any membership on the BOD |
| 2570 | SEC | | | 02/01/2001 <br><br> G444633 - G444644 <br><br> Agreement and General Release between John Todd and Gateway |
| 2571 | SEC | | | 00/00/0000 <br><br> G444645 <br><br> Termination Payment and Benefits Statement for John Todd |
| 2572 | SEC | | | 01/30/2001 <br><br> G444648 <br><br> Letter from William Elliott to John Todd re: Amendment to Agreement and General Release |
| 2595 | Todd Manza | | | 11/15/2000 <br><br> G402478-G402487 <br><br> Email from Bob Manza to John Todd re: FW: EMEA Rev. Recognition-Privileged and Confidential.  Gateway Internal Memo re: EMEA is attached |
| 2596 | Todd Manza | | | 12/07/2000 <br><br> G393433-G393434 <br><br> Email from Pam Avesian to John Todd, Bob Manza, and Kevin Herde, re: EMEA Chronology. Chronology of events is attached |
| 2599 | Todd Manza | | | 00/00/0000 <br><br> G290204-G290224 <br><br> EMEA Update for Gateway Audit |

44

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2601 | Todd Manza | | | 12/11/2000<br><br>G421857-G421873<br><br>Talking Points for John Todd re: John Conway |
| 2627 | SEC | | | 07/31/2000<br><br>G278938 - G278958<br><br>Q3 Financials – 07/31/2000 Jeff's Staff Meeting |
| 2629 | SEC | | | 08/22/2000<br><br>G411298<br><br>Email from Jeffrey Weitzen to John Todd Re:  Q3 |
| 2630 | SEC | | | 09/15/2000<br><br>G291554 - G291564<br><br>Gap to Consensus |
| 2631 | SEC | | | 09/17/2000<br><br>G405871<br><br>Email from John Todd to Sue Parks, Cliff Holtz, Todd Bradley - SD, Peter Ashkin, David Robino, Jeffrey Weitzen Re: Staff |
| 2632 | SEC | | | 09/18/2000<br><br>G291644 - G291647<br><br>Fax to John Todd from Amanda re:  Gateway Q3 Outlook Summary |
| 2633 | SEC | | | 00/00/0000<br><br>G280555 - G280569<br><br>handwritten notes on Office Depot stationery re proposal new accounting, etc. |

45

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2634 | SEC | | | 00/00/0000<br><br>G280547 - G289550<br><br>Todd's handwritten notes re Lockheed balance AOL Acct missing, etc. |
| 2636 | SEC | | | 00/00/0000<br><br>G030057 - G030060<br><br>Gateway Q3 EPS/Gap to Consensus |
| 2637 | SEC | | | 09/17/2000<br><br>G405869-G405870<br><br>Email to Todd Bradley from John Todd re: Backlog Update - September 15, 2000 |
| 2638 | SEC | | | 09/18/2000<br><br>G404961 - G404962<br><br>Email to John Todd, Jeff Augustin, Bob Manza from Mike Kramer cc:  Barb Peterson, John Tennant, Jack Dollard Here is the story on Shared Services Backlog this AM |
| 2639 | SEC | | | 09/25/2000<br><br>G405174 - G405175<br><br>Email to John Todd from Lee Bird Re:  Daily Summary |
| 2644 | SEC | | | 10/01/2000<br><br>G411352<br><br>Email to John Todd, Jeffrey Weitzen re:  Q3 |
| 2645 | SEC Todd | | | 10/06/2000<br><br>G399287<br><br>Email to Jeffrey Weitzen from John Todd re We are getting ready to close the books |

46

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2646 | Todd Manza | | | 10/10/2000<br><br>G134176 - G134181<br><br>Email to Bob Manza from John Todd cc:  Jeff Augustin Re:  Earnings Release |
| 2647 | SEC | | | 10/11/2000<br><br>G410196 - G410197<br><br>Email to John Todd from Bob Manza re:  Earnings Release |
| 2648 | SEC | | | 10/12/2000<br><br>G410235 - G410241<br><br>Email to Meredith VanDixhorn (Mueller), Kelli Richard, Amanda Clardy, Marlys Johnson, Jeff Augustin, Bob Manza, Stephanie Helm, Tyson Heyn; cc: John Todd, Bill Elliott, Brad Shaw from John Spelich re Final-financial results release draft |
| 2649 | SEC | | | 00/00/0000<br><br>G030224 - G030227<br><br>Beyond the Box Analysis - As reported 2Q99, 3Q99, 4Q99, 1Q99; 2Q00, 3Q00/Internal 2Q99, 3Q99, 4Q99, 1Q00, 2Q00, 3Q00 |
| 2650 | Joint | | | 10/11/2000<br><br>G030302 - G030344<br><br>Board of Directors Financial Update John Todd Sr. Vice President and Chief Financial Officer |
| 2652 | SEC | | | 10/26/2000<br><br>G410704 - G410705<br><br>Email to John Todd from Denise Collins re:  FW:  Financing Receivables |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2653 | Todd Manza | | | 10/11/2000<br><br>G030125 - G030164<br><br>Board of Directors Meeting Minutes Q3 2000 |
| 2664 | Todd Manza | | | 12/13/2000<br><br>G420163 - G420195<br><br>Report to the Audit Committee of the Gateway Board of Directors EMEA Investigation, San Diego |
| 2667 | Todd Manza | | | 11/14/2000<br><br>G402460<br><br>Email to John Todd from Bradley Todd without subject line |
| 2673 | SEC | | | 10/04/2000<br><br>G410010 - G410012<br><br>Email to Steve Storr, Larry Richards, Mark Scoular, cc: John Todd from Erik Bodeen re Q2 and Q3 Outbound Summary.xls |
| 2674 | SEC | | | 01/10/2001<br><br>G227383 - G227384<br><br>Email to Tammi Jones from Erik Bodeen cc: Steve Storr, Larry Richards, Mark Scoular re: Please update Q4 FTB Outbound Summary report |
| 2676 | SEC | | | 10/26/2000<br><br>G410675 - G410694<br><br>Email to Andy Swadlow, Tony Montemurro, Erik Bodeen, Steve Storr, Mark Scoular, John Todd, cc: Roberta Hussey from Margaret Robertson re: Presentations for today's meeting with attachments |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2678 | SEC | | | 05/08/2000<br><br>G150022 - G150023<br><br>Meeting Notes with John Todd |
| 2698 | SEC | | | 06/08/2000<br><br>G401633<br><br>Email to Brad Richards, Bruce Broll, Steve Storr, Mike O'Connor, Michael Preuett, Jason Kvidera, Lance Bobolz from Larry Richards, cc: Cliff Holtz, John Todd, Tom Reedy, Erik Bodeen, Larry Newton re: Final Word on Short Term Strategy |
| 2699 | SEC | | | 06/10/2000<br><br>G401690<br><br>Email to John Todd from Cliff Holtz, cc: Brad Richards re: FW Santa Campaign - Weekend COB Update |
| 2700 | SEC | | | 06/12/2000<br><br>G155718<br><br>Email to Erik Bodeen, Larry Newton, cc: John Todd from Larry Richards re: FW Santa Campaign - Weekend COB Update |
| 2706 | SEC | | | 07/11/2000<br><br>G266218 - G266232<br><br>PwC Report to the Audit Committee of the Board of Directors on the Second Quarter 2000 Review of the Consolidated Financial Statements of Gateway, Inc. |
| 2715 | SEC | | | 5/8/2000 - 9/11/2000<br><br>G428344 - G428502<br><br>Binder containing Manza's handwritten notes |

49

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2716 | SEC | | | 9/12/2000 - 12/19/2000<br><br>G428233.1 - G428343<br><br>Binder containing Manza's handwritten notes |
| 2717 | SEC | | | 09/12/2000<br><br>G245376<br><br>Email to Mike Rehling from Mark Scoular, bcc: Steve Storr, Erik Bodeen, Bob Manza, Mike Newman re: $10,000.00 consumer sale |
| 2726 | SEC<br>Todd | | | 09/05/2000<br><br>G298231<br><br>Email to Jeffrey Weitzen from John Todd, cc: Cliff Holtz, Todd Bradley - SD concerning Ashook came out with a Sector call … that PC demand has not seen its historical up tick for back to school or a strong retail weekend |
| 2727 | SEC | | | 10/12/2000<br><br>NONE<br><br>Earnings Release - Third Quarter 2000 |
| 2728 | Todd | | | 06/11/2000<br><br>G298496<br><br>Email to Jeffrey Weitzen from John Todd concerning loss of approximately $38m in October on about $580m in sales |
| 2729 | Todd | | | 11/27/2000<br><br>G298526<br><br>Email to Jeffrey Weitzen from John Todd concerning being well below their forecast, etc. |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2730 | Todd Manza | | | 11/29/2000<br><br>G298544 - G298549<br><br>Email to Global Directors & Above from Jeffrey Weitzen re:  Announcement today (expect lower than anticipated revenue and earnings this quarter) |
| 2731 | SEC Todd | | | 07/12/2000<br><br>G297262<br><br>Email to Jeffrey Weitzen from John Todd re: Reported numbers |
| 2732 | SEC | | | 07/13/2000<br><br>NONE<br><br>Gateway Posts Record Second Quarter Earnings (2nd quarter 2000 net income increased 36 percent year over year to $122m, etc.) |
| 2733 | SEC | | | 07/18/2000<br><br>G297294 - G297298<br><br>Email to Peter Ashkin, Todd Bradley - SD, Joe Burke, Jack Dollard, Bill Elliott, Mike Hammond, Cliff Holtz, James Pollard, John Renfro, David Robino, Mike Swalwell, John Todd, Ted Waitt, Jeffrey Weitzen from Ed Donald re: Q2 MIP/AIP Results and Q3 MIP/AIP Objectives |
| 2740 | Todd Manza | | | 07/31/2000<br><br>G440767<br><br>Email to Eric Selberg from Lee Bird re: Investigation-Meeting with Outside Counsel |
| 2746 | SEC | | | 05/24/2000<br><br>G408905<br><br>Email to Cliff Holtz, Lee Bird from Brad Holiday, cc: John Todd, Bob Manza re Q2 |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2747 | SEC | | | 07/31/2000<br><br>G399003<br><br>Email to Lee Bird from John Todd re: Consumer July Sales Forecast |
| 2750 | SEC | | | 08/18/2000<br><br>G023974 - G024038<br><br>2nd Quarter 2000 Accounting & Reporting statements |
| 2751 | SEC | | | 00/00/0000<br><br>G023885 - G023973<br><br>3rd Quarter 2000 Accounting & Reporting statements – Bob Manza's |
| 2754 | SEC | | | 00/00/0000<br><br>G292033<br><br>ACS Portfolio Sale |
| 2755 | SEC | | | 06/23/2000<br><br>G286699<br><br>Loan Sale Summary |
| 2756 | SEC | | | 05/26/2000<br><br>G408967<br><br>Email from Erik Bodeen from Larry Richards, Steve Storr, John Todd, cc: Larry Newton  re revised Q2 Deck Strategy |
| 2757 | SEC | | | 06/07/2000<br><br>G406663<br><br>Email from Mark Scoular to Larry Richards, cc: John Todd, re: Results from 6/5 |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2758 | SEC | | | 06/08/2000<br><br>G406699<br><br>Email from Larry Richards to John Todd, Cliff Holtz, cc: Tom Reedy, Mark Scoular, Steve Storr, Larry Newton, Erik Bodeen re: Risk Issues on the Santa 433 List |
| 2761 | SEC | | | 07/25/2000<br><br>G406291 - G406293<br><br>Email from Erik Bodeen to Larry Richards, Mark Scoular, Larry Newton, John Todd, cc: Steve Storr, Bruce Broll, re:  "Prelim 7-9 earnings" |
| 2762 | SEC | | | 00/00/0000<br><br>G270195 - G270207<br><br>Gateway Loan Analysis |
| 2765 | SEC | | | 08/17/2000<br><br>G278573 - G278584<br><br>Meeting with Jeff Weitzen, Re: Gateway Bank |
| 2767 | SEC | | | 05/24/2000<br><br>G408929<br><br>Email from Brad Holiday to David Robino, Todd Bradley - SD, Peter Ashkin, cc: Eric Selberg, Cheryl Fugate, John Todd, Bob Manza re:  Q2 |
| 2774 | SEC | | | 01/11/2001<br><br>G391060 - G391107<br><br>4Q00 Earnings Conf Call Transcript with 01/16/2001 cover email from Johnson, M. to Weitzen attached. |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2775 | Joint | | | 01/16/2001<br><br>G290512 - G290521<br><br>Status Report to the Audit Committee the Board of Directors on our audit of the Consolidated Financial Statements of Gateway, Inc. as of 1/31/2000 |
| 2776 | SEC | | | 05/25/2000<br><br>G288604 - G288610<br><br>John Todd Senior Vice President & CFO Q2 Update Current Roll-up is 6 cents Below Consensus charts, etc. |
| 2777 | SEC | | | 06/29/2000<br><br>G407570 - G407571<br><br>Email to John Todd from John Renfro, re: Q2 MIP Matrix |
| 2785 | Joint | | | 00/00/0000<br><br>G278568 - G278569<br><br>PWC Issues Summary |
| 2786 | SEC | | | 12/29/2000<br><br>G273369 - G273384<br><br>Calendar Planner September 11-December 29, 2000 |
| 2793 | Todd Manza | | | 04/12/2000<br><br>G010428 - G010448<br><br>Audit Committee Meeting Booklet |
| 2796 | Todd Manza | | | 10/11/2000<br><br>G010477 - G010491<br><br>Audit Committee Meeting Booklet |

54

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 2797 | Todd Manza | | | 12/13/2000<br><br>G010634 - G010641<br><br>Audit Committee Meeting Booklet |
| 2800 | SEC | | | 07/11/2000<br><br>G010449 - G010463<br><br>PwC's Report to the Audit Committee of the Board of Directors on the Second Quarter 2000 Review of the Consolidated Financial Statements of Gateway, Inc. |
| 2801 | Todd Manza | | | 10/11/2000<br><br>G010464 - G010476<br><br>Report to the Audit Committee of the Board of Directors on the Third Quarter 2000 Review of the Consolidated Financial Statements of Gateway, Inc. |
| 2806 | SEC | | | 01/16/2001<br><br>G629438 - G629439<br><br>Audit Committee of GTW Minutes of Meeting |
| 3000 | Todd Manza | | | 07/27/2000<br><br>ES00541 - ES00550<br><br>Gateway Ethics & Compliance 2000 Strategic & Tactical Plan Review |
| 3001 | Todd Manza | | | 01/28/2000<br><br>ES00529 - ES00540<br><br>Gateway Ethics & Compliance Strategic & Performance Review Q4 1999 |
| 3002 | SEC | | | 05/24/2000 - 12/08/2000<br><br>ES00113 - ES00260<br><br>Eric Selberg's spiral meeting and call notebook – handwritten |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 3003 | SEC | | | 10/02/2000<br><br>NONE<br><br>Unredacted version of ES00213 - a page from Eric Selberg's meeting and call notebook - handwritten |
| 3004 | SEC | | | 01/01/2000 - 12/31/2000<br><br>ES00273 - ES00528<br><br>Eric Selberg's 2000 Calendar |
| 3005 | SEC | | | 12/08/2000 - 12/22/2000<br><br>ES00261 - ES00272<br><br>Eric Selberg's composition notebook re meetings and calls - handwritten |
| 3006 | Todd Manza | | | 06/30/1999<br><br>G419807 - 419841<br><br>Gateway Code of Ethics |
| 3008 | Todd Manza | | | 1999 – 2000<br><br>ES00568 - ES00584<br><br>PowerPoint slide presentation re Code of Ethics |
| 3009 | SEC | | | 01/03/2000 - 05/23/2000<br><br>ES00001 - ES00112<br><br>Eric Selberg's spiral meeting and call notebook – handwritten |
| 3015 | Todd | | | 07/27/2000<br><br>G527122 - G527123<br><br>Email from Scoular to John Todd cc to Larry Richards, Steve Storr re Associates Needed for Meeting Today - highly sensitive list of subjects to discuss with Associates |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 3018 | SEC | | | 00/00/0000<br><br>G006228<br>Spreadsheet re Portfolio Sale to Associates |
| 3022 | SEC | | | 06/09/2000<br><br>G148174<br><br>Email from Larry Richards to Cliff Holtz with cc to Erik Bodeen re "Risk Issues on the Santa 433 list" and lousy credits |
| 3024 | Todd | | | 6/27/2000<br><br>G191700<br><br>Email from Scoular to Bodeen with cc to Richards, Todd re: CIT Group as replacement for MBNA and looking for "out-of-the-box" solutions in consumer sector |
| 3025 | Todd Manza | | | 07/27/2000<br><br>G256005<br><br>Email from M. Scoular to L. Richards,  Steve Storr re briefing document for John Todd |
| 3026 | Todd Manza | | | 8/11/2000<br><br>G246827<br><br>Email from Newton to Kramer with cc to Manza, Richards, Scoular, Bodeen re: Control of Consumer Loan Loss Allowance |
| 3035 | Todd Manza | | | 00/00/0000<br><br>G477017<br><br>Project Codes |
| 3036 | Joint | | | 01/00/2000<br><br>G010393<br><br>Finance Department organizational chart |

57

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 3038 | SEC | | | 10/18/2000<br><br>G495641 - G495682<br><br>Email from Marlys Johnson, to Team Gateway cc: Mueller, Manza, Prusch, Augustin, Conway, Bird, Kwan, Shaw, Williams, Danielle Thomas, Kather, Spelich, Julie Phillipsen, Sherbin, Heyn re 3Q 2000 Analysts Reports on GTW (Gateway) Earnings |
| 3051 | SEC | | | 09/14/2000<br><br>G404912 - G404921<br><br>Email from Augustin to John Todd re Q3 status, ship summary and margin leverage |
| 3072 | Todd Manza | | | 10/19/2000<br><br>NONE<br><br>Q3 2000 Operating review - Gateway Consumer |
| 3074 | SEC | | | 10/18/2000<br><br>G025428 – G025471<br><br>Email from Marlys Johnson to Team Gateway cc: Meredith (Mueller) VanDixhorn, Bob Manza, Erik Prusch, Jeff Augustin, John Conway, Lee Bird, Peter Kwan, Brad Shaw, Brad Williams, Daniella Thomas, Donna Kather, John Spelich, Julie Phillipsen, Robert Sherbin, Tyson Heyn re 3Q 2000 Analysis Reports on GTW Earnings |
| 3080 | SEC | | | 12/29/2000<br><br>PWC-PEERBOLTE-000001 - PWC-PEERBOLTE-000020<br><br>Date book of Virginia Peerbolte from 11/07/2000 - 12/29/2000 |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 3083 | Todd Manza | | | 01/15/2001<br><br>PWC005711 - PWC005714<br><br>Fax cover sheet from Brandi Sahatjian (VenServ) to Peerbolte re attaching 01/12/2001 letter from John Todd to Michael Rehling (VenServ) re confirmation of terms to PWC |
| 3084 | Todd Manza | | | 12/31/2000<br><br>PWC030920.3887 - PWC030920.3890<br><br>PWC report re "Obtain support for Bill and Hold relationships – VenServ" |
| 3087 | Todd Manza | | | 01/25/2001<br><br>PWC006703 - PWC006708<br><br>Email from Peerbolte to Mike Rasic re Gateway Consumer Financing Receivables |
| 3200 | Todd Manza | | | 12/31/2000<br><br>PWC002708 - PWC002709<br><br>PWC Work paper - title: Assess reasonableness of financial information;  3rd Quarter Interim Review re 1998 US TeamAsset Updates January 1999 |
| 3201 | Todd Manza | | | 12/31/2000<br><br>PWC002696 - PWC002697<br><br>PWC Work paper - title: Read the interim financial information; 3rd quarter interim review re 1998 US TeamAsset Updates Jan 1999 required |
| 3202 | Todd Manza | | | 12/31/2000<br><br>PWC002700<br><br>PWC Work paper - title: Obtain trial balance; 3rd quarter interim review re 1998 US TeamAsset Updates Jan 1999 required |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|----------|----------------|-------------|---------------|------------------------|
| 3203 | Todd Manza | | | 12/31/2000<br><br>PWC002726 - PWC002787<br><br>PWC Work paper - title: Consult as need and document; 3rd quarter interim review re 1998 US TeamAsset Updates Jan 1999 required |
| 3204 | Todd Manza | | | 12/31/2000<br><br>PWC002612 - PWC002614<br><br>PWC Work paper - title: Read client documents; 3rd quarter interim review re 1998 US Team Asset Updates Jan 1999 required |
| 3205 | Todd Manza | | | 12/31/2000<br><br>PWC002587 - PWC002588<br><br>PWC Work paper  title: Update understanding of business and discuss engagement matters with client; re 3rd Quarter Interim Review re update understanding of business and discuss engagement matter with client |
| 3206 | Todd Manza | | | 09/00/2000<br><br>PWC002601 - PWC002606<br><br>Request for information from PWC to Gateway re Q3 audit |
| 3207 | Todd Manza | | | 10/05/2000<br><br>PWC002607 - PWC002609<br><br>PWC's Schedule Request to Gateway re Third Quarter Review 2000 |
| 3209 | Manza | | | 01/14/2001<br><br>G244220<br><br>Email chain between Manza, Scoular, Storr, Tammi Jones and McLaughlin re VenServ and questions from McLaughlin |

60

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 3210 | Manza | | | 01/15/2001<br><br>G228640<br><br>Email chain between Manza, Scoular and McLaughlin re VenServ additional information request |
| 3213 | Todd Manza | | | 09/27/2000<br><br>G209329 - G209338<br><br>Email from Kevin Herde to dana.m.foote@us.pwcglobal.com; Michael McLaughlin, Kelli Richard, Bob Manza, Meredith (Mueller) Van Dixhorn, re Revenue Recognition Draft Policy |
| 3214 | Todd Manza | | | 09/28/2000<br><br>G026897 - G026899<br><br>Email from McLaughlin to Herde, Foote with cc to Kelli Richard, Manza, Meredith Mueller VanDixhorn re revenue recognition draft policy |
| 3215 | Todd Manza | | | 11/00/2000<br><br>NONE<br><br>Form 10Q/A (the amended 10Q) for quarter ending 09-30-2000 (Q3) pages 1 - 17 |
| 3216 | Todd Manza | | | 10/09/2000<br><br>PWC007330<br><br>Flux Report re Lockheed |
| 3217 | Todd Manza | | | 12/31/2000<br><br>PWC002726 - PWC002729<br><br>PWC Work paper 3rd Quarter Interim Review re AR lead |

61

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 3218 | Todd Manza | | | 10/07/2000<br><br>PWC005401 - PWC005413<br><br>Gateway Consolidated P & L US/Canada Operations Detail for the period ending 09/30/2000 |
| 3222 | Joint | | | 09/30/2000<br><br>PWC018074 - PWC018079<br><br>Journal Entries re LM costs |
| 3300 | Todd Manza | | | 10/31/2000<br><br>G031213 - G031226<br><br>Memo from Paustian to Distribution cc: Manza, Kramer, Tennant, Harvey re PWC audit/review attaching PWC's request list |
| 3301 | Manza | | | 02/27/2001<br><br>G171182 - G171185<br><br>Email from Brad Sparks to Kevin Herde re Pending Financial Policies attaching draft policy and summary sheet of practices |
| 4000 | Todd Manza | | | 07/02/2002<br><br>NONE<br><br>Declaration of Tennille Tunnell |
| 4001 | Todd Manza | | | 11/06/2000<br><br>PWC028111 - PWC028112<br><br>PWC working paper re Q3 interim review re Computer A/R increase due to sale of fixed assets |
| 4002 | SEC | | | 01/05/2000<br><br>G004945 - G004959<br><br>Analyst Earnings Conference Call transcript - special conference call (unmarked copy is exh. 105 to SEC MSJ) |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4003 | SEC | | | 01/20/2000<br><br>G006049 - G006070<br><br>Analyst Earnings Conference Call transcript - fourth quarter 1999 |
| 4004 | Joint | | | 01/20/2000<br><br>G001987 – G001992<br><br>Press Release for Fourth Quarter and Full Year Results |
| 4005 | SEC | | | 04/13/2000<br><br>G392137- G392153<br><br>Analyst Earnings Conference Call transcript - first quarter 2000 |
| 4006 | SEC | | | 04/13/2000<br><br>G266250 – G266255<br><br>Gateway's Earnings Press Release |
| 4007 | SEC | | | 07/13/2000<br><br>G007957 – G007974<br><br>Email from Marlys Johnson re attaching copy of a transcript of Gateway's earnings conference call |
| 4009 | Todd Manza | | | 01/11/2001<br><br>G298723 – G298727<br><br>Fourth Quarter Earnings Press Release |
| 4012 | Todd Manza | | | 08/16/2000<br><br>G405565<br><br>Email from Weitzen to Ashkin, Bradley, Holtz, Robino, Todd re staff meetings |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4013 | Todd Manza | | | 12/21/2000<br><br>G642095<br><br>Email from Chaudhri to US Consumer Divisions and above re Dickey appointed vice president |
| 4014 | Todd Manza | | | 08/01/2000<br><br>G496403 - G496406<br><br>Draft #4 - Possibilities Gap Initiative |
| 4025 | SEC | | | 05/24/2000<br><br>G408905<br><br>Email from Holiday to Holtz, Bird; cc: Todd, Manza re Q2 - review of roll up |
| 4027 | SEC | | | 03/20/2000<br><br>000001 - 000004<br><br>Analyst Report from Salomon Smith Barney (The Investext Group) - Morning Meeting Note |
| 4037 | SEC | | | 09/07/2000<br><br>000872 - 000902<br><br>Presentation by John Todd possibly at Salomon Smith Barney's New York technology conference |
| 4039 | SEC | | | 08/17/2000<br><br>000088 - 000094<br><br>Analyst Report from Salomon Smith Barney "GTE: Review of our Three Days with Gateway" |
| 4047 | SEC | | | 10/13/2000<br><br>000122 - 000126<br><br>Analyst Report from Salomon Smith Barney re "GTW: Gateway Delivers the Goods; Reiterate 1H" |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4049 | SEC | | | 10/22/2000<br><br>000717<br><br>New York Times article "Some Gateway Numbers Stay Inside the Box" by Gretchen Morgenson |
| 4071 | SEC | | | 07/14/2000<br><br>000064 - 000067<br><br>Analyst Report from Salomon Smith Barney re "GTW: Solid Second Quarter Results; Reiterate" |
| 4073 | SEC | | | 08/11/2000<br><br>000082 - 000083<br><br>Analyst Report from Salomon Smith Barney re "GTW: Story Sounds Better Than Ever … Reiterate Buy and $96 Target" |
| 4076 | SEC | | | 09/08/2000<br><br>000190 - 000191<br><br>Analyst Report from Salomon Smith Barney re "GTW: Highlights from Salomon Smith Barney Technology Conference" |
| 4081 | SEC | | | 10/12/2000<br><br>000117 - 000118<br><br>Analyst Report from Salomon Smith Barney re "GTW: 3Q00 Earnings Expectations |
| 4086 | SEC | | | 08/07/2000<br><br>G207576<br><br>Email string from Kevin Herde to Brad Sparks re definition of beyond-the-box |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4088 | SEC | | | 07/05/2000<br><br>G285617 - G285618<br><br>Email from Marilyn Miller to John Todd re Finance organization chart |
| 4092 | SEC | | | 12/00/1999 - 01/00/2000<br><br>G287984 - G287988<br><br>1999 Accomplishments and 2000 Objectives - John Todd |
| 4093 | SEC | | | 12/00/1999 - 01/00/2000<br><br>G287994 - G287999<br><br>1999 Accomplishments and 2000 Objectives - John Todd (Handwritten) |
| 4096 | SEC | | | 05/22/2000 - 05/26/2000<br><br>G005484<br><br>John Todd's Calendar |
| 4097 | SEC | | | 06/13/2000<br><br>G286365<br><br>Gateway Inc. Q2 Forecast spreadsheet |
| 4098 | SEC | | | 06/29/2000<br><br>G286694<br><br>Gateway Inc. Q2 Forecast spreadsheet |
| 4099 | SEC | | | 05/29/2000 - 06/02/2000<br><br>G286964 - G286973<br><br>John Todd's Calendar |

66

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4100 | SEC | | | 07/06/2000<br><br>G286693<br><br>Scoresheet |
| 4102 | SEC | | | 10/06/2000<br><br>G030053 - G030054<br><br>Q3 2000 Review - Preliminary (Scoresheet) |
| 4104A | SEC | | | 09/07/2000<br><br>000872 - 000902<br><br>Gateway Presentation to Salomon Smith Barney by John Todd |
| 4104B | Todd Manza | | | 03/00/2006<br><br>NONE<br><br>Expert Witness Report - Michael Mulligan |
| 4105A | SEC | | | 09/11/2000<br><br>G286995 - G287057<br><br>Presentation re: Some Companies are Driven by the Market…. By John Todd |
| 4105B | Todd Manza | | | 03/00/2006<br><br>NONE<br><br>Supplemental Expert Witness Report - Michael Mulligan |
| 4106A | SEC | | | 10/20/2000<br><br>G287118 - G287119<br><br>Facsimile to John Todd re why doesn't resume have Boston Chicken? |

67

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4107 | Todd Manza | | | 06/00/1973<br><br>NONE<br><br>Accounting Principles Board Opinion No. 30 (As Amended) Reporting the Results of Operations - Reporting the Effects of Disposal of a Segment of a Business, and Extraordinary, Unusual and Infrequently Occurring Events and Transactions |
| 4108 | Todd Manza | | | 00/00/0000<br><br>NONE<br><br>APB Opinion 28 - Interim Financial Reporting |
| 4109 | Todd Manza | | | 12/30/1994<br><br>NONE<br><br>Section 10,640 - Statement of Position 94-6 - Disclosure of Certain Significant Risks and Uncertainties (highlighted) |
| 4110 | Todd Manza | | | 00/00/0000<br><br>NONE<br><br>Interpretations of SOP 94-6, "Disclosure of Certain Significant Risks and Uncertainties" |
| 4111 | Todd Manza | | | 11/13/2003<br><br>NONE<br><br>Complaint for Violations of the Federal Securities Laws - with handwritten notations |
| 4112 | Todd Manza | | | 00/00/0000<br><br>NONE<br><br>64 FR 45150 page 4; highlighted |
| 4113 | Todd Manza | | | 00/00/0000<br><br>NONE<br><br>Loan Loss Reserve spreadsheet |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4114 | Todd Manza | | | 07/00/2002 - 08/00/2002<br><br>NONE<br><br>"The Qualitative Considerations of Materiality The Emerging Relationship Between Materiality and Scienter" |
| 4201 | SEC | | | 01/20/2000<br><br>NONE<br><br>Gateway Amended Form 10-K405 for fiscal year ended 12-31-99 |
| 4207 | Todd Manza | | | 01/19/2000<br><br>G027403 - G027451<br><br>Board of Directors FY2000 Plan Update - John Todd |
| 4208 | Todd Manza | | | 01/11/2000<br><br>G302551 - G302552<br><br>Email from Weitzen to Weitzen, Bradley, Andrews, Todd re Strategy Outline for Board |
| 4209 | Todd Manza | | | 01/11/2000<br><br>G302553<br><br>Email from Weitzen to Todd re Board agenda, staffing and odds and ends |
| 4210 | Todd Manza | | | 01/12/2000<br><br>G302556<br><br>Email from Weitzen to Bradley, Todd, Andrews re 2000 plan presentation |
| 4211 | Todd Manza | | | 01/13/2000<br><br>G302557<br><br>Email from Weitzen to Todd re treasury strategy and Gateway Fund |

69

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4213 | Todd | | | 05/02/2006<br><br>G295674<br><br>Email from Todd to Weitzen re April sales |
| 4216 | SEC | | | 07/11/2000<br><br>G010683 - G010685; G010687 – G010688<br><br>Minutes of Meeting Held by the Board of Directors |
| 4218 | SEC | | | 11/13/2000<br><br>G527057<br><br>Email from Scoular to Storr re email messaged dated 11/09/2000 from Kevin Cole to various people re First time Buyer Config |
| 4219 | SEC | | | 08/15/2000<br><br>G298060 - G298062<br><br>Email chain from Weitzen to Bradley re US backlog; feel free to use me to turn up heat on LM [Lockheed] |
| 4262 | SEC | | | 07/25/2000<br><br>G007957 - G007974<br><br>Email from Marlys Johnson to Team Gateway cc: Meredith (Mueller) Van Dixhorn, Bob Manza, Erik Prusch, Jeff Augustin, John Conway, Lee Bird, Peter Kwan, Brad Shaw, Brad Williams, Daniella Thomas, Donna Kather, John Spelich, Julie Philipsen, Robert Sherbin, Tyson Heyn re 2Q Earnings Conference Call Transcript attached; transcript attached |
| 4300 | SEC | | | 02/00/2006<br><br>NONE<br><br>Corrections to Expert Report of Jerry Arnold |

70

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4301 | SEC | | | 01/17/2006<br><br>NONE<br><br>Expert Report - Jerry Arnold |
| 4311 | Todd Manza | | | 01/17/2006<br><br>NONE<br><br>Expert Report - J. Duross O'Bryan |
| 4312 | Todd Manza | | | 01/17/2006<br><br>NONE<br><br>Expert Report - J. Duross O'Bryan |
| 4313 | Todd Manza | | | 02/27/2006<br><br>NONE<br><br>Supplemental Expert Witness Report - J. Duross O'Bryan |
| 4314 | Todd Manza | | | 02/27/2006<br><br>NONE<br><br>Supplemental Expert Witness Report - J. Duross O'Bryan |
| 4315 | Joint | | | 02/27/2006<br><br>NONE<br><br>Documents Relied Upon by J. Duross O'Bryan |
| 4316 | SEC | | | 12/13/2000<br><br>ALIX - 000981<br><br>Email from Neil Murphy to McLaughlin, Goodwin, cc: Ann Lavin re Audit Committee[sic] Presentation |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4320 | SEC | | | 07/11/2000<br><br>G028515 - G027554<br><br>Board of Directors Financial Update - John Todd |
| 4322 | SEC | | | 00/00/2006<br><br>ALIX - 000994 - ALIX 001001<br><br>Draft Notes taken by Heather Stack of Alix re review of documents and interviews by FBI; used by O'Bryan in preparing opinion |
| 4323 | SEC | | | 00/00/2006<br><br>ALIX - 000124<br><br>Draft questions prepared by Heather Stack for Vincent Roberts re questions on various transactions. |
| 4330 | Todd Manza | | | 01/17/2006<br><br>NONE<br><br>Expert Witness Report - Charles Haggerty |
| 4361 | SEC | | | 01/00/2001<br><br>NONE<br><br>Audiotape of Analyst Call re CEO and CFO change |
| 4362 | SEC | | | 01/05/2000<br><br>NONE<br><br>Audiotape of Analyst Call re Pre-Announcement – preliminary results for Q1 |
| 4363 | SEC | | | 01/20/2000<br><br>NONE<br><br>Audiotape of Analyst Earnings Call Q4 1999 |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4365 | SEC | | | 07/30/2000<br><br>NONE<br><br>Audiotape of Analyst Call Q2 2000 |
| 4367 | SEC | | | 10/12/2000<br><br>NONE<br><br>Audiotape of Analyst Call Q3 2000 |
| 4370 | SEC | | | 04/30/1999<br><br>NONE<br><br>Registration Statement on Form S-3 under Gateway 2000, Inc. -  Commission attestation |
| 4374 | SEC | | | 03/20/2000<br><br>NONE<br><br>Form 10-K405 for fiscal year ended 12/31/1999 - Commission attestation |
| 4377 | SEC | | | 07/11/2000<br><br>G010683 - G010688<br><br>Board of Directors' Meeting Minutes – |
| 4378 | SEC | | | 07/13/2000<br><br>G007958 – G007974<br><br>Analyst conference call transcript |
| 4379 | SEC | | | 08/14/2000<br><br>NONE<br><br>Form 10-Q for quarter ended 06/30/2000 - Commission attestation |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4380 | SEC | | | 09/15/2000<br><br>NONE<br><br>Prospectus supplement  - Commission attestation |
| 4384 | SEC | | | 10/11/2000<br><br>G010645 - 010648<br><br>Minutes of Meeting of BOD |
| 4385 | SEC | | | 11/14/2000<br><br>NONE<br><br>Form 10-Q for quarter ended 09/30/2000 - Commission attestation |
| 4386 | SEC | | | 03/02/2001<br><br>NONE<br><br>Amendment to quarterly report on Form 10-Q for quarter ended 03/31/2000- Commission attestation |
| 4387 | SEC | | | 03/02/2001<br><br>NONE<br><br>Amendment to quarterly report on Form 10-Q for quarter ended 06/30/2000 - Commission attestation |
| 4388 | SEC | | | 03/02/2001<br><br>NONE<br><br>Amendment to quarterly report on Form 10-Q for quarter ended 09/30/2000 - Commission attestation |
| 4389 | SEC | | | 03/05/2001<br><br>NONE<br><br>Form 10-K405 for fiscal year ended 12/31/2000 - Commission attestation |

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| 4390 | SEC | | | 04/14/2003<br><br>NONE<br><br>Amendment No. 1 to annual report on Form 10-K for fiscal year ended 12/31/2001 - Commission attestation |
| 4391 | SEC | | | 01/17/2006<br><br>ALIX - 000044 – ALIX - 000074<br><br>Draft Expert Report – J. Duross O'Bryan |
| A | Todd Manza | | | 00/00/0000<br><br>NONE<br><br>J. Duross O'Bryan Binder labeled "Deposition Binder" |
| B | Todd Manza | | | 00/00/0000<br><br>NONE<br><br>Disk Containing Documents Prepared by Larry Newton |
| C | Todd Manza | | | 00/00/0000<br><br>NONE<br><br>J. Duross O'Bryan Binder labeled "Accounting Literature" |
| D | Todd Manza | | | 00/00/0000<br><br>PWC005483 – PWC005503<br><br>PwC 10Q Tie Out for 3Q 2000 |
| E | Todd Manza | | | 00/00/0000<br><br>NONE<br><br>Binder Labeled "Documents Received After Rebuttal Report" |

75

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| F | Todd Manza | | | 10/11/2000<br><br>G010679 – G010783<br><br>Board Package for 10/11/2000 |
| G | Todd Manza | | | 10/11/2000<br><br>G010645 – G010648<br><br>Minutes from Board of Directors Meeting Held 10/11/2000 |
| H | Todd Manza | | | 00/00/0000<br><br>G204352 – G204354<br><br>Audit Projects – Overview, undated |
| I | Todd Manza | | | 06/01/2000<br><br>G203737 – G203739<br><br>Audit Projects – Overview, 06/01/2000 |
| J | Todd Manza | | | 08/14/2000<br><br>G203136 – G203138<br><br>Audit Projects – Overview, 08/14/2000 |
| K | Todd Manza | | | 08/01/2000<br><br>G209850 – G209857<br><br>Financial and Accounting Policies, 08/01/2000 |
| L | Todd Manza | | | 01/25/2001<br><br>G205569 – G205574<br><br>Audit Projects – 01/25/2001 |
| M | Todd Manza | | | 10/31/2000<br><br>PWC010349<br><br>Gateway/LMC Equipment Sale Transaction Updated dated 10/31/00 with handwritten notes |

03 CV 2230 BEN (WMc)

| Exh. No. | Offering Party | Date Marked | Date Admitted | Description Of Exhibit |
|---|---|---|---|---|
| P | Todd Manza | | | 2/24/1999<br><br>G004351-004377<br><br>Financial Picture Presentation by Todd |
| Q | Todd Manza | | | 01/5/2001<br><br>G002278<br><br>Team Gateway Organizational Chart |

## VIII.

A list of witnesses to be called by plaintiff and defendants.

Plaintiff intends to call the following witnesses:

Dr. Jerry Arnold
Beth Biddle
Eric Bodeen (by deposition)
Dana Foote
Richard Gardner
Robert D. Manza
Michael McLaughlin
Julie Paustian (by deposition)
Virginia Peerbolte
Sukhdev Rai (by deposition)
Michael Rehling (by deposition)
John Lawrence Richards (by deposition)
Eric Selberg
John J. Todd
Tennille Tunnell

Defendants Todd and Manza intend to call the following witnesses:[10/]

Lewis "Lee" Bird III (by deposition, if the witness is otherwise unavailable)
Richard Todd Bradley (by deposition, if the witness is otherwise unavailable)
Javade Chaudhri
Amanda Clardy
William Elliott
Dana Foote (by deposition, if the witness is otherwise unavailable)
Charles A. Haggerty

---

[10/]     Plaintiff objects to defendants' offering the testimony of Bird, Bradley, Foote, McLaughlin, and Peerbolte, by deposition as each of these witnesses will either be testifying live in the Plaintiff's case or are subject to the subpoena power of the Court.

Clifford Holtz (by deposition)[11/]
Michael W. Kramer (by deposition)[12/]
Gary Mann (by deposition)
Robert Manza
Michael McLaughlin (by deposition, if the witness is otherwise unavailable)
Michael Mulligan
J. Duross O'Bryan
Virginia Peerbolte (by deposition, if the witness is otherwise unavailable)
Kelli Ann Richard (by deposition, if the witness is otherwise unavailable)
Mark Scoular
John Todd
Meredith Van Dixhorn
Jeffrey Weitzen

## IX.

The following issues of law, and no others, remain to be litigated upon the trial:

1.    Whether defendant Todd violated Section 17(a) of the Securities Act.

2.    Whether defendant Todd and/or defendant Manza violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

3.    Whether Gateway violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder; and whether defendant Todd and/or defendant Manza aided and abetted a violation by Gateway of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder.

4.    Whether defendant Todd and/or defendant Manza violated Exchange Act Rule 13b2-2.

5.    Whether Gateway violated Section 13(b)(2)(A) of the Exchange Act; and whether Todd and/or Manza aided and abetted a violation by Gateway of Section 13(b)(2)(A), and directly violated Exchange Act Rule 13b2-1.[13/]

---

[11/]    Plaintiff objects to defendants' designation of Holtz, as he was not previously designated by defendants as a witness in the initial Pretrial Order lodged August 28, 2006.

[12/]    Plaintiff objects to defendants' designation of Kramer, as he was not previously designated by defendants as a witness in the initial Pretrial Order lodged August 28, 2006.

[13/]    Defendants strenuously object to the SEC's December 7, 2006 inclusion of a books and records claim for relief. The SEC identified its claims in a proposed pretrial order lodged with the Court on August 28, 2006, following the Court's August 1, 2006 rulings on cross-motions for summary judgment. The books and records claim for relief was not included. A pretrial

(continued...)

03 CV 2230 BEN (WMc)

6.    If any of the above violations are established, whether the Commission is entitled to the following relief:

    a.    permanent injunctions prohibiting future violations of the violated provisions;

    b.    disgorgement of ill-gotten gains and prejudgment interest thereon;

    c.    civil penalties; and/or

    d.    If  Todd's violation of Section 17(a)(1) of the Securities Act and/or Todd's and Manza's violation of Section 10(b) of the Exchange Act and Rule 10b-5 are established, whether the Commission is entitled to an order prohibiting such defendant from acting as an officer or director of any issuer.

The defendants contend that the following issues of law also remain to be litigated at trial:

7.    Whether each claim for relief fails to allege facts sufficient to state a claim upon which relief may be granted.

8.    Whether Todd and/or Manza are entitled to costs of suit incurred herein, including attorneys' fees.

9.    Whether a corporate officer's good faith reliance on fully informed outside auditors is a defense to claims of securities law violations, negating scienter on the part of the officer.  *See SEC v. Goldfield Deep Mines Co.*, 758 F.2d 459, 467 (9th Cir. 1985).  *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 666 n.12 (E.D. Va. 2001); *Mathews v. Centex Telemanagement*, 1994 U.S. Dist. LEXIS 7895, at *21 (N.D. Cal. June 8, 1994) (concluding that the plaintiffs could not, as a matter of law, establish scienter where the defendants "conferred with and relied in good faith on their outside auditor").

_____

[13]/    (...continued)
conference occurred on September 13, 2006, at which time the SEC requested more time to reduce the trial in light of the rulings.  Only now – 71 days after lodging an agreed-upon pretrial order, and 4 days after the shorter, revised pretrial order was due for lodging – have these abandoned claims resurfaced.

10.   Whether good faith reliance on fully informed legal counsel also provides a defense to claims by negating scienter on the part of the officer. *Id.*

11.   Whether pursuing transactions to meet projections constitutes fraud. There is nothing improper about having earnings targets, monitoring results, tracking prospects and closing deals before a quarter's end to help meet targets. This is common practice every quarter in public companies. Courts recognize that trying to close a sale to generate revenue is what businesses do every day. *In re Cypress Semiconductor Sec. Litig.*, 891 F. Supp. 1369, 1381 (N.D. Cal. 1995). As the First Circuit has said, "There is nothing inherently improper in pressing for sales to be made earlier than in the normal course . . ." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 202 (1st Cir. 1999), *accord Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 321 F. Supp. 2d 1342, 1351 (N.D. Ga. 2004); *In re Focus Enhancements, Inc. Secs. Litig.*, 309 F. Supp. 2d 134, 149 (D. Mass. 2001).

12.   Whether a violation of GAAP constitutes scienter unless "coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors." *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1261 (10th Cir. 2001). Courts recognize that GAAP tolerates a "'range of reasonable treatments, leaving the choice to management.'" *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 205 (1st Cir. 1999) (quoting *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 544 (1979). To show that a GAAP violation constitutes fraud, the SEC must prove that the accounting treatment had <u>no</u> reasonable basis. *See In re Cirrus Logic Secs. Litig.*, 946 F. Supp. 1446, 1450-1460 (N.D. Cal. 1996).

13.   Whether restatements evidence violations of GAAP or GAAS. *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 710 (N.D. Ill. 2005) ("The restatement of SPSS financials does not on its own establish violations of GAAP"); *id.* at 718 (assumption that restatement showed that GAAS had been violated was "unwarranted").

14. Whether restatements can be necessitated by non-culpable errors. *In re Metawave Communs. Corp. Secs. Litig.*, 298 F. Supp. 2d 1056, 1079 (W.D. Wash. 2003) (holding that evidence of restatement did not amount to admission that defendants had issued false and misleading financial reports).

15. Whether a restatement can reflect changes in accounting principles. *Rebenstock v. Deloitte & Touche*, 907 F. Supp. 1059, 1069 (E.D. Mich. 1995) (noting "differing views on how changes in accounting principles should be reported").

16. Whether restatements can be used as evidence of "fraud by hindsight." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 494 (S.D.N.Y. 2004).  See also *In re Peritus Software Services, Inc. Securities Litigation*, 52 F. Supp. 2d 211, 223 (D. Mass. 1999).

17. Whether the fact a transaction is restated years later does not by itself establish that an earlier financial statement was misleading. *Davis v. SPSS, Inc*., 385 F. Supp. 2d 697, 710, 718 (fact that results were restated did not show that GAAS or GAAP had been violated). *See also In re Sun  Healthcare Group Sec. Litig.*, 181 F. Supp. 2d 1283, 1297 (D.N.M. 2002) ("the mere fact that [a company] issued a restatement of its previous financial statements," by itself did not support action for fraud).

18. Whether there is a requirement in the law that the sale to ACS should have been disclosed in the Form 10-Q because of regulations setting forth what must be disclosed in the Management Discussion and Analysis section ("MD&A").

19. Whether the impact of the Associates and ACNA transactions on earnings, cash flow and balances was immaterial.

20. Whether there is a legal requirement to disclose an immaterial transaction. *See McCormick v. Fund Am. Cos., Inc*., 26 F.3d 869, 876 (9th Cir. 1994) (issuer of securities was required to disclose only *material* information, and to avoid only *material* misrepresentations.).

21. Whether the obligation to make disclosure of information complete and accurate

81

does not mean that, by revealing one fact about an item, one must reveal all other facts too, even if they would be "interesting" to the market. *See Backman v. Polaroid Corp.*, 910 F.2d 10, 16-17 (1st Cir. 1990); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988). Rather, a company is only obligated to disclose facts that prevent the disclosed statement from being so incomplete as to mislead. *See Backman,* 910 F.2d at 16-17.

22. Whether the outbound sales initiative was immaterial and need not to have been disclosed. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) ("a minimal standard might bring an overabundance of information within its [the public's] reach, and lead management 'simply to bury the shareholders in an avalanche of trivial information – a result that is hardly conducive to informed decision making.'") (quoting *TSC Indus. v. Northway, Inc.*, 326 U.S. 438, 448-49 (1976)).

23. Whether Todd and/or Manza and Gateway were under any duty to specifically disclose the Lockheed sale. Even if the transaction were viewed as a "one-timer," which is in dispute, that does not create a duty to disclose. *See In re Worlds of Wonder Sec. Litig.*, 814 F. Supp. 850, 876 (N.D. Cal. 1993) (company was not required to disclose large transaction entered into on different terms than the company usually did business on, where transaction posed no particular risk to investors). *See also TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 448-449 (1976) ("[I]f the standard of materiality is unnecessarily low, not only may the corporation and its management be subjected to liability for insignificant omissions or misstatements, but also management's fear of exposing itself to substantial liability may cause it simply to bury the shareholders in an avalanche of trivial information a result that is hardly conducive to informed decision-making."); *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988).

24. Whether, in doing the alleged acts complained of by the SEC, Todd and/or Manza acted properly on the advice of Gateway's certified public accountants, auditors and lawyers, thereby defeating the SEC's claims.

**X.**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

**XI.**

The parties agree that liability must be tried before a jury and appropriate relief must be determined by the Court without a jury.

/ / /

/ / /

/ / /

**XII.**

The trial of this case shall not be bifurcated, unless the Court requires additional evidence to determine appropriate relief after the jury finds one or both defendants liable.

**XIII.**

Time for trial is ten (10) days, or the equivalent of 60 hours.  The parties agree that Plaintiff will have five (5) days (or 30 hours) to present its case, including opening statement, direct and cross-examination of witnesses, objections, and closing and rebuttal arguments and Defendants shall have five (5) days (or 30 hours) to present their defenses, including opening statement, direct and cross-examination of witnesses, objections, and closing and rebuttal arguments.  The total time allotted to the defendants shall be split equally, 15 hours each, or if they mutually agree, it may be apportioned between them on some other basis.  Time for jury selection (including conduct of voir dire) and instructing the jury is not included in the time for trial.[14]

DATED:  December 12, 2006

---

[14]    Plaintiff objects that the time allotted by the Court to try this complex financial fraud case is inadequate, and reserves it right to appeal from the Court's rulings in this regard.

03 CV 2230 BEN (WMc)

Hon. Roger T. Benitez
United States District Judge

84